**In re COLUMBIA RIBBON & CARBON MANUFACTURING CO., INC., Debtor.**

**Bankruptcy No. 80B10040 (JG/PA).**

United States Bankruptcy Court, S.D. New York.

Oct. 22, 1985.

Rivkin, Leff, Sherman & Radler, Garden City, N.Y. by Frank L. Amoroso, Erica B. Garay, for Powers Chemco, Inc.

Gainsburg, Gottlieb, Levitan, Greene & Cole, New York City by Ira Greene, of counsel, for Ira S. Greene, trustee.

### MEMORANDUM DECISION AND ORDER ON MOTION OF POWERS CHEMCO, INC. FOR LEAVE TO FILE A LATE CLAIM AND VACATION OF AUTOMATIC STAY

PRUDENCE B. ABRAM, Bankruptcy Judge:

By notice of motion dated January 21, 1985, Powers Chemco, Inc. ("Chemco") sought an order of the court pursuant to Sections 362, 501, 509 and 726 of the Bankruptcy Code and Bankruptcy Rules 3002(c) and 9006 granting Chemco leave to file a late proof of claim,[1] or in the alternative,

---

**1.** Although Chemco's motion seeks leave to file a late proof of claim, it is evident from the papers as a whole that Chemco is actually re-

questing this court to find its late claim entitled to *pari passu* treatment with timely claims in reliance on Bankruptcy Code § 726(a)(2)(C).

granting relief from the automatic stay. In its memorandum of law in suoport of its motion, Chemco asserts that it should be permitted to file its proof of claim because (1) it did not have notice or actual knowledge of the bankruptcy proceedings so as to file a timely claim; (2) its claim was not listed on the debtor's schedule of debts; (3) it was not aware of its claim so as to file a timely claim; (4) the unsecured claims have not been reviewed and the assets of the debtor's estate have not been distributed; (5) Chemco has moved expeditiously since learning of its claim and Columbia Ribbon's bankruptcy; and (6) no prejudice or delay will result from the filing of Chemco's proof of claim.

The claim Chemco wishes to file is in the amount of $2.1 million and is for expenditures incurred or expected to be incurred by Chemco in alleviating an alleged hazardous waste condition on a parcel in Glen Cove, New York which is now owned by Chemco and was formerly owned by the debtor, Columbia Ribbon & Carbon Manufacturing Co., Inc. ("Columbia Ribbon"). The parcel (the "Columbia Ribbon Parcel") had been purchased by Chemco from Columbia Ribbon on or about December 1, 1978 for approximately $1.4 million. Chemco states that it first learned of the possible hazardous waste problem in 1983, which was well after the July 20, 1981 date for the filing of claims, and first learned of Columbia Ribbon's bankruptcy case in or about May 1984.

Columbia Ribbon, which was engaged in the manufacturing of inked ribbons, carbon paper and film, and other duplicating products, filed a petition for reorganization under Chapter 11 of the Bankruptcy Code on January 11, 1980, and continued in operation as a debtor-in-possession. On motion of the Creditors' Committee, the case was

converted to Chapter 7 on December 12, 1980. Shortly thereafter, Ira S. Greene (the "Trustee") was appointed the Chapter 7 trustee.

The Trustee has not opposed Chemco's motion though having been given ample opportunity to do so. However, this lack of opposition by the Trustee cannot foreclose the court's obligation to exercise its judicial duty to determine whether the relief requested should be granted giving due regard to the facts [2] and the relevant legal principles.

Chemco's motion raises an important question respecting the scope of the appropriate judicial inquiry on a motion by a creditor seeking to have its late claim declared entitled under Bankruptcy Code § 726(a)(2)(C) to share *pari passu* with timely filed claims. Code § 726(a)(2) provides as follows:

"(a) Except as provided in section 510 of this title, property of the estate shall be distributed—
" * * *

"(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—

"(A) timely filed under section 501(a) of this title;

"(B) timely filed under section 501(b) or 501(c) of this title; or

"(C) tardily filed under section 501(a) of this title, if—

"(i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and

"(ii) proof of such claim is filed in time to permit payment of such claim."

---

No order of this court is required to enable Chemco to file a late proof of claim. There is nothing in Chemco's papers that suggests the Bankruptcy Clerk's Office has refused, or is likely to refuse, to accept Chemco's proof of claim for filing. Any late filed claim is customarily noted as such on the claims docket by the Bankruptcy Clerk's Office.

**2.** This court must, because of the lack of any opposition by the Trustee, accept as true the facts as alleged by Chemco. However, this court need not adopt the inferences and conclusions put forth by Chemco.

■ For the reasons which follow, the court concludes that the scope of its inquiry under Code § 726(a)(2)(C) is narrow and is limited to determining whether (1) the creditor did not have notice or actual knowledge of the bankruptcy case in time for timely filing of a proof of claim [3] and (2) the final distribution has been made.[4] Both of the necessary conditions are satisfied as to Chemco.[5] Thus, Chemco's proffered proof of claim is entitled to Code § 726(a)(2)(C) treatment.[6]

There is a dearth of cases construing or discussing the application of Code § 726(a)(2)(C).[7] No cases have been found discussing whether in applying Code § 726(a)(2)(C) the courts may by the use of laches or otherwise deny *pari passu* treatment to no-notice creditor claims filed prior to the statutorily stated outside limit of "in time to permit payment". There are a number of cases decided after the Bank-

ruptcy Code was enacted dealing with late claims that determine the issue based on construction of the Bankruptcy Rules or on the basis of pre-Code case law and the doctrine of laches without reference to Code § 726(a)(2)(C). See, e.g., *In re Cmehil*, 43 B.R. 404, 408 (Bankr.N.D.Ohio 1984) ("In the present [Chapter 7] case, it is undisputed that the Carltons were not listed as creditors and did not receive notice of the deadline for filing proofs of claims. The Carltons appeal to this court's sense of equity to permit them to file a late claim. Equity aids the vigilant and diligent, not those who sleep on their rights. The Carltons waited more than two years after learning of these proceedings before they asserted their claim against the estate. Then, after receiving the Notice of Final Meeting of Creditors and discovery that there might be assets available, they decided to file their claim. Having delayed this

3. This court will hereafter use the shorthand term "no-notice creditor" to refer to a creditor who did not have notice or actual knowledge of the bankruptcy case in time for timely filing of a proof of claim.

4. Although not at issue in this case, this condition would be satisfied, in this court's view, even if an interim distribution has been made as long as the final distribution had not been made. In that event, the no-notice creditor ought to be entitled to receive out of the final distribution monies, assuming the estate is sufficient, equal to the prior interim distribution before any further distribution to other creditors. This was the rule which governed under the former Bankruptcy Act in the event an interim distribution was paid before the final date for filing of claims. See former Bankruptcy Act § 65.

5. Chemco must be treated as a no-notice creditor as it has not been shown to have been scheduled and has not been shown to have had knowledge of Columbia Ribbon's bankruptcy case prior to the last day to file a timely proof of claim. It further appears that no distribution, interim or final, has been made in this case to any unsecured creditor and that the case has not yet been closed.

According to a May 13, 1985 letter from the Trustee, it appears that to date the Trustee has marshalled and remitted some $7.1 million to Chemical Bank, the holder of a court-approved lien and security interest. Chemical Bank has also recovered $1.5 million through its own efforts. The Trustee calculates that Chemical Bank is still due $1.5 million exclusive of inter-

est. The Trustee also advised that Chapter 11 administrative claims amount to an additional $10 million. All known physical assets have been liquidated and the Trustee is pursuing litigations with an aggregate possible recovery of $13 million. It is thus apparent that the possibility of any distribution to pre-petition unsecured creditors is speculative. Over 800 timely claims were filed. Columbia Ribbon's schedules show aggregate pre-petition, unsecured claims of $9,481,737. That number does not include Chemco's asserted claim of $2.1 million.

6. The holding that Chemco is entitled to have its claim share *pari passu* with timely filed claims should not be construed as a finding that Chemco's claim is being allowed. The Trustee remains free to object to the Chemco claim in the future. See Code § 502(a) ("A claim * * *, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest objects") and § 704(5) ("The trustee shall * * if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper").

7. Code § 726(a)(2)(C) applies only in a liquidation under Chapter 7. See Code § 103(b). Thus, this court's holding is limited to Chapter 7 cases. Generally speaking, the case authorities on late claims do not make clear distinction between Chapter 7 and Chapter 11 cases, the latter being governed by separate principles. In addition, it is essential to distinguish between those cases dealing with creditors with notice who seek to file late claims and those dealing with no-notice creditors.

long, the court finds their claim is barred by laches."); and *In re Popular Fruit & Produce, Inc.*, 21 B.R. 185 (Bankr.S.D.N.Y. 1982) (No-notice creditor claim barred by failure to file within the six-month period because no extension possible under former Bankruptcy Rule 906(b)).

Under the former Bankruptcy Act, the claims of no-notice creditors were treated as late claims and entitled to share only in the surplus, if any, remaining after the payment in full of timely filed claims. See former Bankruptcy Act § 57n. The Act's filing deadlines were generally strictly enforced even against creditors without knowledge. See 3 *Collier on Bankruptcy* (14th Ed.1977), ¶ 57.27 and especially at 418 ("The weight of authority considers the statutory six months' period as mandatory and immutable"). But see *In re Electronic Computer Programming Institute of Fresno, Inc.*, 16 C.B.C. 236, 238 (Bankr.S. D.N.Y.1978) ("Recent case law has established that, in order to prevent patent injustice, a bankruptcy court may admit exceptions to Section 57n other than those expressly stated.")

It was against this background that Code § 726(a)(2)(C) was enacted:

"The provision is written to permit distribution to creditors that tardily file claims if their tardiness was due to lack of notice or knowledge of the case. Though it is in the interest of the estate to encourage timely filing, when tardy filing is not the result of a failure to act by the creditor, the normal subordination penalty should not apply." H.Rep. 95–595, 95th Cong. 1st Sess. ("H.R. 95–595") at 383

See generally 4 *Collier on Bankruptcy* (15th Ed.1985) ¶ 726.02[2].

The time limits for filing of proofs of claim are not specified in the Code itself. See Code § 501. Rather, the time limits have been left to the Bankruptcy Rules, as have other matters of procedure. The time limit for filing claims in a Chapter 7 case

was that found in Rule 302(e) [8] of the former Bankruptcy Rules, adopted when the former Bankruptcy Act was still in effect, until the new Bankruptcy Rules were adopted effective August 1, 1983. Rule 3002(c) of the present Bankruptcy Rules now provides the applicable time period as follows:

"c) Time for Filing. In a Chapter 7 liquidation or chapter 13 individual's debt adjustment case, a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors called pursuant to § 341(a) of the Code, except as follows:

"(1) On motion of the United States, a state, or subdivision thereof before the expiration of such period and for cause shown, the court may extend the time for filing of a claim by the United States, a state, or subdivision thereof.

"(2) In the interest of justice and if it will not unduly delay the administration of the case, the court may extend the time for filing a proof of claim by an infant or incompetent person or the representative of either.

"(3) An unsecured claim which arises in favor of a person or becomes allowable as a result of a judgment may be filed within 30 days after the judgment becomes final if the judgment is for the recovery of money or property from that person or denies or avoids the person's interest in property. If the judgment imposes a liability which is not satisfied, or a duty which is not performed within such period or such further time as the court may permit, the claim shall not be allowed.

"(4) A claim arising from the rejection of an executory contract of the debtor may be filed within the time as the court may direct.

"(5) If notice of insufficient assets to pay a dividend was given to creditors pursuant to Rule 2002(e), and subsequently the trustee notifies the court

---

**8.** Rule 302(e) provided "a claim must be filed within 6 months after the first date set for the first meeting of creditors" with certain excep-

tions. Thus, claims in Code Chapter 7 cases had to be filed within six months of the first meeting held pursuant to Bankruptcy Code § 341(a).

that payment of a dividend appears possible, the clerk shall notify the creditors of that fact and that they may file proofs of claim within 90 days after the mailing of the notice.

"(6) In a chapter 7 liquidation case, if a surplus remains after all claims allowed have been paid in full, the court may grant an extension of time for the filing of claims against the surplus not filed within the time hereinabove prescribed."

Glaringly absent from Rule 3002(c) is any provision relating to the time within which the claims of no-notice creditors are to be filed.[9] A rule fixing a specified period after the creditor acquires notice or knowledge of the bankruptcy case could be readily drafted along the lines used for the drafting of statutes of limitations for fraud.[10] Such a rule might provide:

"A late claim that otherwise qualifies for distribution under § 726(a)(2)(C) of the Code must be filed within 90 days after the date of discovery of the bankruptcy case."

Although Bankruptcy Rule 3002 itself contains no provisions identifiable as relating to Code § 726(a)(2)(C), the Advisory Committee Note to that rule does contain a reference to that section:

"Provision is made in Rule 2002(a) and (h) for notifying all creditors of the fixing of a time for filing claims against a surplus under paragraph (6). This paragraph does not deal with the distribution of the surplus. *Reference must also be made to § 726(a)(2)(C) and (3) which permits distribution on late filed claims.*" (Emphasis added).

This court has concluded on the basis of this reference, the absence of any provision

in Rule 3002(c) governing no-notice claims, and the placement of the no-notice creditor provision in a section of the Code providing for distribution that the omission of a rule must be viewed as intentional. It is an expression of opinion by the Advisory Committee on the Bankruptcy Rules that no rule was appropriate, apparently because Code § 726(a)(2)(C) was either viewed as a statute of limitation or as a matter of substantive law.

Review of the legislative history of the Code supports this apparent view of the Advisory Committee on the Bankruptcy Rules. The House Report on H.R. 8200 contains a listing of 322 items that would be dealt with by new bankruptcy rules or local rules. See H.R. 95–595 at 293–308, U.S.Code Cong. & Admin.News 1978, pp. 6250–6265. None of the items in this exhaustive listing suggest a rule relative to the topic covered by Code § 726(a)(2)(C). See especially, H.R. 95–595 at 300, U.S. Code Cong. & Admin.News 1978, p. 6257 ("(159) Procedure to resolve disputes concerning distribution of property in a Chapter 7 case including time, manner, notice, and disposition of such dispute"). The listing of areas to be covered by the rules concludes:

"Finally, there are several matters that may not be dealt with by the rules. An exhaustive list is beyond the scope of this appendix, but a few areas deserve mention. The rules may not shift the burden of proof from the moving party; *the rules may not alter statutes of limitation; the rules may not affect substantive rights;* and the rules may not be inconsistent with procedure prescribed in the statute." H.R. 95–595 at 308 (emphasis added).

Sir Arthur Conan Doyle, "Silver Blaze."

**9.** " 'You consider that to be important?' he asked.
    " 'Exceedingly so.'
    " 'Is there any other point to which you would wish to draw my attention?'
    " 'To the curious incident of the dog in the night-time.'
    " 'The dog did nothing in the night-time.'
    " 'That was the curious incident,' remarked Sherlock Holmes."

**10.** N.Y.C.P.L.R. § 213(8) provides that the statute of limitations for fraud causes of action is "computed from the time the plaintiff or the person under whom he claims discovered the fraud, or could with reasonable diligence have discovered it."

The drafters of the Code were acutely aware of the interplay between the new Bankruptcy Code and the new Bankruptcy Rules.

"In order to make the new rulemaking authority workable and flexible, the bill contains very little of a procedural nature, unlike the current Bankruptcy Act. What it does contain is included because of the importance of the policy reflected in the provision, and is not subject to change by the Supreme Court. The elimination of most procedure from the statute will give the Supreme Court optimal flexibility to treat with matters of procedure, or, if no rule is made, for the courts to fashion procedure on a case-by-case basis." H.R. 95–595 at 292–3.

Determining the timeliness of late claims filed by no-notice creditors should not be handled by the courts fashioning procedure on a case-by-case basis. It is not a subject that is appropriately dealt with in so variable a way. The last date for the filing of a proof of claim by a no-notice creditor should be a certain and readily ascertainable one, even if expressed only in the statute's terms of not later than "in time to permit payment" of the claim.

■ This court finds no place for the application of the doctrine of laches in applying Code § 726(a)(2)(C).[11] Thus, the

---

11. Chemco's moving papers are predicated on the assumption that the court has the equitable discretion to allow a late filing and that a late claim could be barred by laches. The papers go to great lengths to rebut any laches on the part of Chemco. However, had this court found the doctrine of laches applicable, the court would have found Chemco guilty of laches. Chemco, which must be considered a sophisticated claimant, delayed asserting its claim for eight months after it learned of Columbia Ribbon's case and for at least twelve months after it was aware of its claim and its connection with the Columbia Ribbon parcel. In mid-December 1984, Chemco's attorneys advised the Trustee in writing of their refusal to disclose the name of their client or the size or nature of the claim involved. Compare *Hoos & Co. v. Dynamics Corporation of America*, 570 F.2d 433, 437 (2d Cir.1978) (In order for a document to constitute an informal proof of claim subject to later amendment someone must make a demand.) and *In re Cmehil, supra.* This lack of candor and the delay in asserting a known right is incompatible with the demands of equity that the movant not have unclean hands.

Other aspects of Chemco's actions are also worthy of comment. Chemco is vague about how in 1983 it came to discover the hazardous waste on the Columbia Ribbon parcel, a not-too surprising discovery considering the nature of Columbia Ribbon's former business. Columbia Ribbon's Statement of Affairs indicates that it had been located at the Glen Cove site since 1929. The documentation submitted in support of Chemco's claim indicates that Chemco was being billed by a Washington, D.C. law firm, apparently in relation to the Columbia Ribbon parcel, for services beginning in September 1983. The engineering consultant's bills begin with the two weeks ending December 2, 1983. For reasons which are wholly unexplained except for an assertion that Chemco is "a good corporate citizen", Chemco reported the hazardous waste problem to the authorities at some unspecified time in the spring of 1984.

Chemco's claim is predicated on a consent decree that it entered into on June 7, 1984 with the N.Y.S. Department of Environmental Conservation ("DEC"). This decree conveniently, considering Columbia Ribbon was not a party, makes numerous recitals respecting Columbia Ribbon's responsibility, and Chemco's corresponding lack of responsibility, for the actual contamination of the site. These self-serving findings against Columbia Ribbon are alleged as fact in Chemco's proof of claim.

This consent decree, which was no doubt preceded by negotiations with DEC over some period of time, was signed just a few weeks after Chemco has stated that it first learned of Columbia Ribbon's bankruptcy case. The affidavit of Erica B. Garay, an associate with the firm representing Chemco, states:

"15. Simultaneous with the site investigation, discussions with DEC, preparation of decontamination plans and the clean-up activities, Powers Chemco undertook to determine if Columbia Ribbon was available to participate and contribute to the cost of the clean-up.

"16. At the end of May 1984 that Powers Chemco learned that Columbia Ribbon had commenced the instant bankruptcy proceeding.

"17. Powers Chemco contacted the Clerk of the bankruptcy court at that time to ascertain whether Columbia Ribbon was still in existence and if Powers Chemco could seek indemnification.

"18. Powers Chemco understood based on information available that it was too late to file a claim against Columbia Ribbon, because the case was closed and the assets distributed. Therefore Powers Chemco did not file a claim at that time." Affidavit of Erica B. Garay sworn to January 21, 1985.

court need not consider how long the creditor waited to file its claim after learning of the bankruptcy case. The court need only find, as it has done in this case, that the creditor did not have notice in time to file a claim before the expiration of the 90-day period and that final distribution of the estate has not occurred.

That no-notice claimants may have longer to file claims than the 90 days afforded their scheduled counterparts is a natural outcome of the court's holding. The no-notice creditor's self-interest is normally best served by filing a claim promptly as the creditor otherwise takes the risk that an interim distribution will be made or the case will be closed before the claim is filed. If creditors or the trustee are concerned about the possibility of no-notice creditors, there are a number of steps that could be taken during the 90-day claims filing period to insure notice is widely given by verifying and researching the lists of creditors and possible creditors and by publishing notices in appropriate places.[12]

Ms. Garay's conclusory statements are plainly not based on personal knowledge and are based only on information and belief. Compare Fed. R.Civ.Pro. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."). The affidavit submitted by John Biedry, Manager of Environmental Affairs of Chemco, fairs little better. His affidavit simply states:

"22. In the spring of 1984 * * * we contacted the bankruptcy court and we understood that the case was closed without assets remaining. We therefore understood it to be too late to file a claim based on this liability." What led Chemco to knowledge of the bankruptcy is never explained. The procedures followed are not described. No statement is made of any inquiry to the Secretary of the State of New York to ascertain whether Columbia Ribbon had a registered agent.

A large claim was apparently abandoned based on a telephone call by an unidentified person received by an unidentified person. While the court accepts that the Clerk's Office did advise whoever telephoned that the bar date had long since passed, this court cannot accept the implication of the two affidavits that the Clerk's Office advised the case was closed. The docket entries for the first part of 1984 could not have led anyone to believe the case was closed. Moreover, it is evident that the Clerk's Office could not give any legal advice to Chemco. Chemco should have pursued its May 1984 inquiry more diligently and with greater sophistication, particularly as the consent decree implicating Columbia Ribbon was about to be signed.

Chemco's present attorneys state that they realized upon looking at the case docket sheet in November 1984 that the case was not closed. Garay Affidavit at ¶ 19. They do not give any reason why they declined to identify their client to the Trustee at that time. It would appear the attorneys pressed forward in November and December 1984 in the belief that some benefit to Chemco might accrue from their doing so. Columbia Ribbon did have some type of insurance policy to which resort may perhaps be had and that may have been on their mind. The estate is a large one as reflected in the Trustee's interim reports. Although it is problematic whether pre-petition unsecured creditors will receive anything, it would be difficult to make a calculation without an understanding of the claims.

Contrary to Chemco's suggestions, this case does not involve any significant question respecting the interrelationship of environmental policy and the bankruptcy law. See *Ohio v. Kovacs*, —— U.S. ——, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985). Had Chemco had notice in time to file a claim but failed to do so, it would have been wholly irrelevant that its claim was for a contribution for hazardous waste clean-up. Thus, even if laches were to be applied, the nature of the claim sought to be asserted would be but one of a myriad of facts to be considered.

12. Of course, an alternative solution would be the adoption of a Bankruptcy Rule limiting the time within which no-notice creditors may file claims after discovery of the bankruptcy case. Whether the period should be as short as the 90 days afforded to scheduled creditors may be questioned. The no-notice claimant may take longer to act after acquiring notice because of a lack of the information the scheduled creditor obtains upon receipt of the notice of the Code § 341(a) meeting. The addition of a rule requiring assertion of the no-notice claim within a specified period after acquiring knowledge of the bankruptcy case can be argued not to alter the substantive right to file a late claim entitled to share *pari passu* anymore than the present imposition by the Bankruptcy Rules of a 90-day limit for filing scheduled claims alters the substantive right to file a claim provided by Code § 501(a). See also H.R. 95-595 at 293 ("In general, matters left to the rules concern * * * setting time limits); and at 295 (matters to be dealt with by the Bankruptcy Rules include "(66) Specification of the time, place, form, and number with respect to filing, amending, or withdrawing a proof of claim or interest including any special rules for governmental units and

■ The filing of late claims has posed difficult questions for the courts for many years. See, e.g., *In re Harbor Tank Storage Co.*, 385 F.2d 111 (3d Cir.1967); and *In re Intaco Puerto Rico, Inc.*, 494 F.2d 94 (1st Cir.1974). The Code now clearly divides late claims into two categories: those belonging to creditors with notice sufficient to file a timely proof of claim and those without such notice. The holding made by the court today simplifies the procedure for the filing of no-notice claims as it eliminates the need for any determination by the court of the equities of the case. No-notice creditors may file a claim entitled to *pari passu* distribution status at anytime before the final distribution is made.

Chemco's other request in its motion was for a vacation of the automatic stay so that "a suit for contribution can be instituted against Columbia Ribbon." Garay Affidavit at 7. It is alleged that Columbia Ribbon may have an insurance policy that might cover some or all of Chemco's clean-up liability. Generally, the court will vacate the automatic stay to permit a claimant to continue an action covered by insurance that is being defended by the carrier. See *Foust v. Munson Steamship Lines,* 299 U.S. 77, 57 S.Ct. 90, 81 L.Ed. 49 (1936); and *In re Celectro-Knit Fabrics,* 24 B.R. 326 (Bankr.S.D.N.Y.1982). Chemco is directed to submit supplemental papers on notice to the Trustee if it continues to wish a modification of the Code § 362 stay clarifying its request and accompanied by a proposed order.

It is so ordered.

customers of stockbrokers or commodity brokers").