United States Court of Appeals,

Fifth Circuit.

No. 92–2044

Summary Calendar.

In the Matter of Donald E. JONES and Eileen V. Jones, Debtors.

NCNB TEXAS NATIONAL BANK, Etc., Plaintiff,

Federal Deposit Insurance Corporation in Its Corporate Capacity for National Bank, Plaintiff–Appellee,

v.

Donald E. JONES and Eileen V. Jones, Defendants–Appellants.

July 14, 1992.

Appeal from the United States District Court for the Southern District of Texas.

Before JOLLY, DAVIS, and SMITH, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Donald and Eileen Jones, the debtors in a bankruptcy proceeding, appeal the bankruptcy court's grant of NCNB's summary judgment motion denying them a discharge. During the course of the bankruptcy proceedings, the bankruptcy court issued several orders directing the debtors not to use insurance proceeds without approval of the court. Notwithstanding these orders, however, the debtors assigned a third party an interest in the proceeds.

The bankruptcy court denied the debtors a discharge on the grounds that the debtors transferred the proceeds with an intent to hinder or defraud NCNB. The district court affirmed on the grounds that the debtors refused to obey a lawful court order.

On appeal, the debtors argue that NCNB filed its objection to discharge out of time, that the court issued its order prohibiting the use of the CDs after they had already assigned the interest to a third party, that the court was not authorized to issue the orders, and that NCNB did not have a security interest in the insurance proceeds. We hold that all of the debtors' arguments are meritless

and therefore affirm the bankruptcy's denial of discharge.

I

Donald and Eileen Jones instituted a Chapter 11 proceeding in bankruptcy on May 1, 1984. At that time, the Joneses were indebted to Interfirst Bank Nassau Bay, N.A., the FDIC's predecessor in interest. Two months after the Joneses filed for bankruptcy, a fire destroyed a variety of the Joneses' personal property located on a tract of land in Houston, Texas. The property was insured by Highlands Insurance Company. An adversary proceeding between the Joneses and Highlands was instituted to resolve the coverage issue.

In August 1987, the debtors filed a Motion to Compromise Controversy to Settle the Insurance Adversary Proceeding. The debtors proposed to settle with Highlands for $130,000.00. Prior to approval of the settlement, NCNB filed an application for turnover of cash collateral in which it asserted a security interest in the settlement proceeds. On September 22, 1987, the bankruptcy court entered its Order to Prohibit the Use of Cash Collateral and Turnover of Cash Collateral. The order states in part:

> Ordered, adjudged and decreed that the debtor is prohibited from using income, insurance proceeds, profits or rents generated and collected from the operation of the property without the provision of adequate protection of the lien interest, or without further order of this Bankruptcy Court. And the same is to be held by debtor until a hearing is held on the 9th of October.

On October 4, 1987, the court entered an order compromising the insurance controversy. The order directed Highlands to pay the debtors $130,000.00. The order also stated that "the debtor shall deposit such sums into insured interest bearing accounts ... and shall [sic] expend such funds nor any part thereof without further order of this court." On December 1, 1987, the bankruptcy court entered an order indefinitely continuing the hearing and directing the debtor to "maintain a separate account for income and cash and insurance proceeds from the Property until such time as the parties are heard on the application," and prohibiting the debtor from using "such income and proceeds without prior

approval of First Republic Bank or order of this Court." On February 9, 1988, the debtors filed a notice informing the court that they had received the $130,000.00 and had deposited $90,000.00 in a Certificate of Deposit at one bank and the remaining $40,000.00 in a CD at another bank. The notice states that the proceeds were deposited in accordance with the court's October 4, 1987 order.

On May 29, 1989, the bankruptcy court partially allowed the claim of NCNB in the amount of $183,000.00. In August 1989, Houston Sea Packing Company, Inc., a corporation wholly owned by the debtors, executed two notes payable to Fidelity National Bank, one for $80,000.00 and one for $90,000.00. Both notes were guaranteed by Mr. Jones and secured by the CDs. The debtors did not request or obtain permission from the bankruptcy court to make these assignments.

At a hearing on September 11, 1989, NCNB expressed concern that the debtors would not abide by the court's orders regarding the insurance proceeds. At the close of the hearing, the court enjoined the debtor from using, transferring or encumbering the $130,000.00 of insurance proceeds or any interest earned thereon without an order of the court.

On September 22, 1989, a Chapter 11 trustee was appointed. The case was converted to a Chapter 7 case and the trustee was retained as a Chapter 7 trustee. Upon demanding the debtors to turn over the CDs bought with the insurance proceeds, the trustee discovered Fidelity's purported interest in them. NCNB then filed an order with the bankruptcy court asking it to hold the debtors in contempt. On May 10, 1990, the bankruptcy court found Ronald Jones guilty of civil contempt of court. It held that the CDs were, in whole or in part, property of the estate and subject, in part, to NCNB's lien.

On June 25, 1990, NCNB filed a complaint objecting to the debtors' discharge pursuant to 11 U.S.C. § 727(a)(2)(4)(5) and (6). NCNB then filed a motion for summary judgment, seeking the court to deny the debtors a discharge. The bankruptcy court granted NCNB's motion. The debtors

appealed to the district court and the district court affirmed the denial of a discharge finding that the debtors failed to obey a court order.

The debtors now appeal to this court. NCNB assigned its interest in the note evidencing the debtors' obligation to the FDIC in its corporate capacity.

## II

On appeal, the debtors argue that NCNB's objection to the discharge was not timely filed, that the collateral assignment of the CDs occurred after the bankruptcy court's order, that the court's orders regarding the insurance proceeds were not binding because the proceeds were not property of the estate, and that NCNB did not prove it had a security interest in the insurance proceeds. On the other hand, the FDIC argues that the debtors clearly violated the bankruptcy court's orders by assigning the CDs as collateral and that the bankruptcy court did not err in granting summary judgment and denying the debtors a discharge.

## III

### A

Summary judgment is appropriate if the moving party establishes that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A bankruptcy court's determination that a debtor should be denied a discharge is reviewed only for abuse of discretion. *In re Cox,* 904 F.2d 1399, 1401 (9th Cir.1990). NCNB, in its motion for summary judgment, argued that the debtors should be denied a discharge pursuant to 11 U.S.C. § 727(a)(2)(4)(5) and (6). Section 727 provides in pertinent part:

> (a) The court shall grant the debtor a discharge, unless
>
> > (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed,

destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed ... (B) property of the estate, after the filing of the petition;

(6) the debtor has refused in the case—

(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;

The bankruptcy court granted the motion for summary judgment and denied the debtors a discharge, finding that they had violated § 727(a)(2). The district court affirmed, finding that the debtors had violated § 727(a)(6)(A). This court can affirm a grant of summary judgment on any grounds supported by the record. *Bernhardt v. Richardson–Merrell, Inc.,* 892 F.2d 440, 444 (5th Cir.1990).

B

First, the debtors argue that NCNB filed an objection to discharge after the deadline set by the bankruptcy court. The case was originally brought as a Chapter 11 case. On August 1, 1986, an order converting it to a Chapter 7 case was issued. On January 7, 1987, a notice of conversion setting March 27, 1987 as the last day to file a discharge was issued. On January 29, 1987, the court rescinded the conversion order, stating that the court had committed a clerical error. On October 11, 1989, the case was converted to a Chapter 7 case. On March 23, 1990, NCNB filed a motion to extend time to file complaints. On April 24, 1990, the court granted the motion and extended the filing period to June 25, 1990. On June 25, 1990, NCNB filed its notice objecting to the debtors' discharge.

The debtors argue that the March 27, 1987 deadline set by the court in the first conversion order expired and that under Bankruptcy Rule 1019(2), there is no new time period to file objections when the case is converted from a Chapter 7 case to a Chapter 11 case and then back to a Chapter 7 case.[1] In the instant case, the filing period in the original Chapter 7 case did not expire because the

---

[1]Rule 1019(2) provides:

> A new time period for filing claims, a complaint objecting to discharge, or complaint to obtain a determination of dischargeability of any debt shall commence

court rescinded the conversion order well before the time period expired. Therefore, under Rule 1019(2), when the Chapter 11 case was converted to a Chapter 7 case on October 11, 1989, a new period for filing objections to discharge began pursuant to Rule 4004. Thus, the debtors' argument that NCNB filed its objection out of time has no merit.

Second, the debtors argue that they assigned the interest in the CDs before the bankruptcy court issued its September 11, 1989 order specifically directing them not to use, transfer, or encumber the insurance proceeds. This statement is true, but it does not carry the day. Two years earlier, on October 4, 1987, the court entered an order directing the debtors to deposit the proceeds in a bank and further prohibiting the debtors from expending the proceeds without an order from the court. This order was in effect when the debtors assigned the interest in the CDs. Furthermore, the court's December 1, 1987 order, prohibiting the debtors from using the insurance proceeds without prior approval of the bank or the court, was in effect. Thus, the debtors violated, or in the words of the statute, "refused to obey" both of these orders of the bankruptcy court by granting Fidelity an interest in the CDs.

Next, the debtors contend that they were not bound by the bankruptcy court's orders concerning the insurance proceeds because the insurance proceeds were not property of the estate because the proceeds were compensation for property they acquired post-petition. "[A]n order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." *Maness v. Meyers,* 419 U.S. 449, 459, 95 S.Ct. 584, 591, 42 L.Ed.2d 574 (1975). "If a person to whom a court directs an order believes that order is incorrect, the remedy is to appeal, but, absent a stay, he must comply promptly with the order

pursuant to Rules 3002, 4004, or 4007, provided that a new time period shall not commence if a chapter 7 case had been converted to a chapter 11, 12, or 13 case and thereafter reconverted to a chapter 7 case and the time for filing claims, a complaint objecting to discharge, or a complaint to obtain a determination of the dischargeability of any debt, or any extension thereof, expired in the original chapter 7 case.

pending appeal." *Id.*

Bankruptcy courts are courts of equity[2] and under 11 U.S.C. § 105, they are authorized to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  A bankruptcy court has the "equitable power and the duty "to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate.' " *In re Multiponics, Inc.,* 622 F.2d 709, 714 (5th Cir.1980) (quoting *Pepper v. Litton,* 308 U.S. 295, 308, 60 S.Ct. 238, 246, 84 L.Ed. 281 (1939)).

In its motion for turnover of cash collateral, NCNB asserted a security interest in the property that was damaged by the fire and requested the court to turn over as cash collateral, the insurance proceeds.  The debtors, in their response, argued that NCNB did not have a security interest in the proceeds because the proceeds were compensation for property that they bought after they filed for bankruptcy protection.  In other words, they argued that the proceeds were not property of the estate. The parties made these same arguments again at the September 11, 1989 hearing.  The debtors, however, did not submit evidence proving that all of the insurance proceeds were compensation for after-acquired property.  Irrespective of whether the funds ultimately may have been found to be compensation for after-acquired property, it was clearly within the equitable power of the bankruptcy court to order the debtor not to use the insurance proceeds without a court order, pending the court's resolution of this issue.  The debtors disobeyed this order by granting Fidelity a security interest in the CDs.  Therefore, the bankruptcy court did not err in granting NCNB's motion for summary judgment or abuse its discretion in denying the debtors a discharge because the debtors refused to obey a lawful court order.  11 U.S.C. § 727(a)(6)(A).[3]

---

[2]*In re Lockard,* 884 F.2d 1171, 1179 n. 14 (9th Cir.1989);  *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 1003 (4th Cir.1986), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177.

[3]The debtors also contend that they are not bound by the order because NCNB did not prove its security interest in the proceeds.  The debtors further argue that the guarantee signed by Ronald Jones was altered.  The bankruptcy court entered an order that was within its equitable power.  The debtors could have appealed the order, but absent a withdrawal of the order on

IV

In conclusion, we hold that NCNB filed a timely objection to the debtors' discharge. We further hold that it was within the court's equitable power to issue orders directing the debtors not to use the insurance proceeds without court approval. The debtors clearly disobeyed these orders. The bankruptcy court's grant of summary judgment and denying the debtors a discharge is therefore

AFFIRMED.

---

appeal, the debtors were obligated to obey it.