United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 24, 2003**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

──────────────────────

No. 02-31072
SUMMARY CALENDAR

──────────────────────

NORMAN SANAMO

                    Plaintiff

    v.

TRICO MARINE SERVICES, INC.; ET AL

                    Defendants

    And

APPLIED DRILLING TECHNOLOGY INC.; ENSCO OFFSHORE COMPANY

                    Third Party Plaintiffs – Appellees

    v.

SLADCO INC.

                    Third Party Defendant – Appellant

──────────────────────────────────────────────────────

Appeal from the United States District Court
for the Eastern District of Louisiana
(00-CV-2476-S)

──────────────────────────────────────────────────────

Before REYNALDO G. GARZA, JONES, and EMILIO M. GARZA, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:[1]

───────────────────

[1]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R.

-1-

Appellant Sladco, Inc. appeals from the district court's order granting summary judgement in favor of appellees Ensco Offshore Company and Applied Drilling Technology, Inc., on third party claims against Sladco for indemnity and defense. For the following reasons, the judgement of the district court is affirmed. We remand solely for a determination regarding the amount of attorney fees owed.

I.

FACTUAL AND PROCEDURAL BACKGROUND

In July of 1991, Applied Drilling Technology, Inc. (hereinafter "ADTI") entered a Master Service Contract with Sladco, Inc. (hereafter "Sladco"). On April 13, 1999, ADTI executed a Day Work Drilling Contract with Ensco Offshore Company ("Ensco"), according to which Ensco provided ENSCO RIG 67, a jack-up drilling rig[2], which ADTI used to drill a well for its customer, Remington Oil and Gas, in the Gulf of Mexico.

Norman Sanamo was working as a casing crew pusher for the Sladco casing crew that had been assigned to perform services aboard ENSCO RIG 67.[3] On February 9, 2000, Sanamo and his crew were transported to the jack-up rig via the M/V CIMARRON RIVER, a vessel owned by

---

47.5.4.

[2] "A jack-up drilling rig is a floating rig with legs that can be lowered into the seabed. Once the legs are secured in the seabed, the rig can be 'jacked up' out of the water to create a drilling platform. The process can be reversed, and a jack-up rig can be towed to new sites." *Demette v. Falcon Drilling Co., Inc.*, 280 F.3d 492, 495 (5th Cir. 2002); *see also* Thomas J. Schoenbaum, 1 *Admiralty and Maritime Law* § 3-9, 100 n. 8 (West 2d Ed. 1994)(describing jack-up rigs and other types of rigs).

[3] "Casing is an activity performed during the [process of] drilling for oil, whether onshore or offshore; it involves the welding together and hammering of pipe into the subsurface of the earth to create a permanent construction." *Demette*, 280 F.3d at 495 (internal quotation and citation omitted).

Trico Marine Services, Inc. (hereinafter "Trico").

The following day, after the casing services had been completed, Sanamo was departing the rig via a personnel basket attached to one of the cranes aboard RIG 67. Sanamo and two other Sladco employees climbed aboard the personnel basket while it was on the deck of the rig, and were then lifted off of the rig and lowered in the direction of the stern deck of the M/V CIMARRON RIVER, which was to take the crew members back to shore. During the attempted transfer, Sanamo was injured when the personnel basket struck the deck of the crewboat with significant force.

Sanamo filed suit against ADTI, Ensco and Trico, alleging that he was injured as a result of the defendants' negligence and the negligence of defendants' employees. ADTI and Ensco filed a third-party claim against Sladco seeking defense and indemnity for the underlying claim. ADTI and Ensco alleged that the Master Service Agreement between ADTI and Sladco included a reciprocal indemnity obligation, and that Sladco had agreed to hold harmless and indemnify ADTI –along with any other parties contracting with ADTI– for any injuries sustained by Sladco's employees.

ADTI and Ensco filed a Motion for Summary Judgment on the issue of defense and indemnity, which the district court granted on May 21, 2002. Although the underlying suit filed by Sanamo was settled, the defense and indemnity issue remained in dispute. As part of the settlement, Sladco reserved the right to appeal the district court's decision granting summary judgment on the claims for defense and indemnity.

Sladco filed a Motion for Reconsideration/New Trial, which the district court denied. Sladco then filed timely notice of appeal. The parties have agreed to ask the district court to

determine the amount of attorney's fees and expenses owed after the indemnity issues presented by this appeal are decided.

II.

DISCUSSION

A. Jurisdiction & Standard of Review

We have jurisdiction pursuant to 28 U.S.C. § 1291 because Sladco appeals from a final decision of the district court.[4] We review a district court's grant of summary judgment *de novo*, applying the same standards as would the district court. *S&W Enterprises, L.L.C. v. Southtrust Bank of Alabama, NA*, 315 F.3d 533, 537 (5th Cir. 2003). Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing FED.R.CIV.P 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

B. General Discussion and Basis for Claims

As noted above, this case arises from a maritime personal injury suit filed by Norman Sanamo. ADTI and Ensco (collectively referred to as "ADTI/Ensco") filed a third-party complaint against Sladco seeking defense and indemnity for the underlying personal injury claim. According

---

[4] Although the issue of attorney's fees remains unresolved, generally such an issue does not prevent an appeal of a judgment based on § 1291. *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202, 108 U.S. 1717, 1722 (1988) ("an unresolved issue of attorney's fees for the litigation in question does not prevent judgment on the merits from being final"). Furthermore, no exception to the general rule regarding attorney's fees is present. *See Noble Drilling, Inc. v. Davis*, 64 F.3d 191 (5th Cir. 1995).

to ADTI/Ensco, Sladco is required to defend and indemnify them for Sanamo's claims under the reciprocal indemnity provisions of the Master Service Agreement between ADTI and Sladco. ADTI/Ensco argues that Sanamo is a "subcontractor's employee" and that Ensco is one of the "other parties contracting with Contractor" envisioned by sections 10(a) and (b) of the July 7, 1992 amendment to the agreement.

In the district court, Sladco argued that the contract at issue was governed by state law, including the Louisiana Oilfield Indemnity Act ("LOIA"), which prohibits indemnity agreements. In the alternative, Sladco argued that federal law prohibits any agreement which requires an employer to indemnify vessel interests.

The district court found that the indemnity provision at issue is contained in a maritime contract and is governed by maritime law –thus, the court found Sladco's arguments relating to LOIA unavailing. On appeal, Sladco does not challenge the district court's determination that maritime law applies. Therefore, this appeal centers around the applicability of Section 905(b) of the Longshore and Harbor Workers Compensation Act.

C. Issue One: Whether ENSCO RIG 67 was an OCSLA situs at the time of Sanamo's injury.

Sladco contends that the trial court erred in granting ADTI/Ensco's motion for summary judgment because there was no evidence offered that demonstrated ENSCO RIG 67 was an OCSLA situs.

Sladco points out that, while ENSCO RIG 67 is unquestionably a jack up rig, there was no summary judgment evidence to establish that the rig was in fact "jacked up." Sladco accurately describes a jack-up rig as a "potential" OCSLA situs. This circuit has clearly determined that a

jack-up rig, if "jacked up," constitutes an OCSLA situs. *Demette v. Falcon Drilling Company, Inc.*, 280 F.3d 492, 498 (5th Cir. 2002); *see also Diamond Offshore Company v. A&B Builders, Inc.*, 302 F.3d 531, 543 (5th Cir. 2002). This is because a jack-up rig, when jacked up, is "a device temporarily attached to the seabed, which was erected on the OCS for the purpose of drilling for oil." Thus, a jacked-up rig falls into the second category of OCS situs. *Diamond Offshore Company*, 302 F.3d at 543.

A jack-up rig that is not jacked up, however, does not necessarily constitute an OCS situs. As noted earlier, a jack up rig is a floating rig that can be towed to a particular site. Until it is attached to the seabed and erected, it cannot be considered an OCSLA situs.

As Sladco points out, in *Diamond Offshore Company* this Court determined that, in order to satisfy its burden of establishing there is no issue of material fact in regards to the issue of whether an accident occurred on an OCSLA situs, summary judgment evidence must establish that a rig (or other device) is "attached" to and "erected" on the seabed. *Id.* at 544-45. Though it may be obvious, this burden can be overcome by simply demonstrating that a jack-up rig was actually jacked up at the time the relevant injury occurred.

Pointing to our decision in *Diamond Offshore*, Sladco contends that ADTI/Ensco failed to produce any summary judgment evidence demonstrating that the ENSCO RIG 67 was "jacked up" at the time Sanamo's injury occurred, and that therefore the case should be remanded to the district court for further findings. In *Diamond Offshore*, this Court was faced with a very similar situation to the one at hand. Relying on our decision in *Demette*, this Court reversed a summary judgment decision and remanded the case to the district court so that the record could be supplemented in order to establish that a jack-up drilling rig was attached to and erected on the

-6-

seabed at the time the plaintiff was injured –i.e., to establish that the rig was actually "jacked up."

In response to Sladco's claim that there was no summary judgment evidence establishing that the Ensco rig was jacked up, ADTI/Ensco filed an unopposed motion for leave to supplement the record on appeal, which was granted. ADTI/Ensco supplemented the record by filing deposition transcripts from Norman Sanamo and Joe Lopez, both of which were actually cited in appellees' original motion for summary judgment. According to ADTI/Ensco, the transcripts were inadvertently not attached to the memorandum in support of their motion for summary judgment in the district court.

The deposition testimony clearly establishes that ENSCO RIG 67 was "jacked up" at the time of the incident. In particular, testimony from Joe Lopez –who was working on RIG 67 at the time of the incident in question– clarifies that the rig was jacked up. After establishing that ENSCO RIG 67 was operating at the time of the incident, Lopez was asked if "it was jacked up on the outer continental shelf, temporary [sic]?" To which he replied, "Yes, sir."

Though Sladco, in its reply brief, acknowledges the supplemental memorandum, it reiterates that the summary judgment evidence did not establish that ENSCO RIG 67 was jacked up at the time of Sanamo's accident, as required by *Diamond Offshore Drilling*.

Although the parties and the district court had the benefit of our decision in *Demette*, which provided the basis for our decision in *Diamond Offshore Drilling*, the opinion in *Diamond Offshore Drilling* was rendered subsequent to the District Court's grant of ADTI/Ensco's motion for summary judgement. The *Diamond Offshore Drilling* decision is much more explicit in terms of what is required for summary judgment evidence than is *Demette*. In *Diamond Offshore*, the case was reversed and remanded for additional summary judgment proof; according to the court

the remand "should require only a brief supplement to the record detailing the contact, if any, that the [rig] had with the ocean floor at the time of [plaintiff's] alleged injury." *Id.* at 546.

In the case at hand, remanding for such a purpose would be impractical and superfluous. The record, as it now stands, includes the requisite evidence to demonstrate that, at the time of the alleged injury, the rig constituted an OCSLA situs. Furthermore, the evidence at issue was actually cited in the movant's motion for summary judgment before the district court. This Court can affirm a grant of summary judgment on any grounds supported by the record. *Jones v. NCNB Texas National Bank*, 966 F.2d 169, 172 (5th Cir. 1992). Sladco has never offered any evidence to demonstrate that the Ensco rig was not jacked up. In short, it has offered no such evidence because no such evidence exists. To the extent that the district court granted summary judgment on the basis of ENSCO RIG 67's status as an OCSLA situs because it was jacked up at the time of Sanamo's injury, that portion of the district court's judgment is affirmed.

D. Issue Two: Whether Section 905(c) of the LHWCA is applicable.

Sladco's main point of contention is that the indemnity provisions found in the master service contract are unenforceable. The majority of the arguments Sladco offers on appeal are derivatives of this general contention.

In the district court, Sladco argued that state law –in particular, the Louisiana Oilfield Indemnity Act ("LOIA")– voided the indemnity agreements at issue. As previously noted, Sladco does not challenge the district court's determination that the indemnity provisions were part of a maritime contract. "For disputes arising out of contracts –including indemnity contracts for offshore drilling– the courts of this circuit have held that if the contract is a maritime contract,

federal maritime law applies of its own force, and state law does not apply." *Demette*, 280 F.3d at 497.

Sladco contends that Section 905(b) of the Longshore and Harbor Workers Compensation Act applies and voids the indemnity agreements at issue. Section 905(b) prohibits indemnification by the employer for a claim brought by the employee against the vessel owner due to bodily injury. *Sumrall v. Ensco Offshore Co.*, 291 F.3d 316, 322-23 (5th Cir. 2002). Sladco concedes that Section 905(c) contains an exception for cases where: (a) an employee is entitled to receive benefits under the Outer Continental Shelf Lands Act (43 U.S.C. § 1333) and (b) the indemnity agreements are reciprocal; however, Sladco argues that the exception does not apply to the case at hand.

Sladco contends that OCSLA is not applicable because Sanamo was injured on a crewboat on navigable waters, not on an OCS site –i.e., not on the jacked up rig. Although Sladco admits Sanamo satisfies the requirements of the LHWCA, Sladco argues that the LHWCA applies of its own force and not through the OCSLA. If Sanamo were entitled to receive benefits by virtue of Section 1333(b) of the OCSLA, then Section 905(c) of the LHWCA provides an exception, allowing reciprocal indemnity agreements. In other words, Sladco contends that Sanamo's injury did not occur on an OCS site and that thus the OCSLA is not applicable. According to Sladco, the exception allowing mutual indemnity agreements contained in 33 U.S.C. § 905(c) does not apply. Therefore the resolution of this portion of the appeal hinges on whether or not Sanamo was injured on an OCS site.

To cut to the chase, ADTI/Ensco and Sladco differ in how they characterize where Sanamo was injured. According to ADTI/Ensco, the injury occurred on ENSCO RIG 67.

According to Sladco, the injury occurred on the deck of the crewboat. As noted in the factual synopsis above, Sanamo's injury occurred when the personnel basket being lowered by a crane attached to RIG 67 slammed into the deck of a crewboat. The record clearly establishes that Sanamo was inside the basket when the injury occurred.

According to Sladco, if we affirm the district court's decision we would be extending the definition of OCSLA situs to include crewboats on navigable waters that are not attached to the seabed. Despite the fervency with which appellant argues its position, we do not believe affirming the district court's decision would lead to any such result.

According to the district court's order granting summary judgment, "It is undisputed that Sanamo was injured while he was in a personnel basket that was attached to a crane aboard the ENSCO Rig 67. The ENSCO Rig 67 is an OCSLA situs; therefore, Sanamo's injury occurred as the result of operations on the OCS." At the risk of complicating what the district court may have justly determined to be a simple issue, we turn to existing doctrine to aid in our analysis of this portion of the case.

In *Hollier v. Union Texas Petroleum Corp.*, 972 F.2d 662 (5th Cir. 1992), the plaintiff died while attempting to cross from a crewboat to a fixed platform on the outer continental shelf when he slipped between the boat and the platform, was crushed, and then drowned. The court determined that the plaintiff was injured on an OCSLA situs –the platform– because he was in physical contact with the platform at the time of his injury, despite the fact that he was also in contact with the crewboat.

This Court revisited *Hollier* in the case of *Hogden v. Forrest Oil Corp.*, 87 F.3d 1512 (5th Cir. 1996). In *Hogden*, the plaintiff was injured when he attempted a rope swing transfer from an

oil platform to a vessel. Although the rope was attached to the platform, an OCSLA situs, the plaintiff was actually injured upon impact with the vessel to which he was attempting to transfer. The panel first noted that, according to *Hollier*, the OCSLA situs test is met when a plaintiff is injured while in contact with both an OCSLA situs and a vessel. The panel then held that because the plaintiff was in physical contact with the rope –which was attached to and thus a portion of the platform he was departing– at the time of his physical contact with the back deck of the vessel, the OCSLA situs requirement was met.

The existing circuit precedent cited above suggests that, because Sanamo was in contact with the crane which was attached to and part of Ensco Rig 67 at the time of the injury, the OCSLA situs requirement is met. This portion of the district court's judgment is therefore affirmed.

E. Issue Three: Whether the indemnity provisions are reciprocal.

Sladco also argues that the district court erred in finding that the indemnity provisions in the contract between Sladco and ADTI were reciprocal. As previously noted, the exception allowing for indemnity agreements in Section 905(c) of the LHWCA requires that any indemnification between a vessel owner and employer be reciprocal in order for such indemnity agreements to be valid.

Sections 10(a) and 10(b) of the Amended Master Service Agreement between Sladco and ADTI provide for the two parties to indemnify each other. The provisions are virtually identical and, as noted by the district court, are unambiguous. Sladco apparently recognizes this fact and directs our attention instead to additional contract provisions it avers place further obligations on

Sladco which are not reciprocated by ADTI.

Sladco first argues that Section 10(c) of the contract places a more onerous burden on Sladco. Section 10(c) reads as follows:

> To the extent of Subcontractor's [Sladco's] negligence, Subcontractor indemnifies and will hold Contractor harmless from any liability to third parties for bodily injury or property damage which arise out of and during Subcontractor's performance under this Contract; however, notwithstanding anything to the contrary herein, no party shall be liable to the other for any special, indirect or consequential damages of any nature or kind due to any cause whatsoever.

Although there is no equivalent provision pertaining to ADTI, a closer look at the language of 10(c) reveals that the section does not impose any new obligations on Sladco.

The first clause of 10(c) does not affect the reciprocal indemnity agreement provisions because it concerns Sladco's liability to third parties to the extent of its own negligence. The absence of this section or the inclusion of an identical section pertaining to the liability of ADTI would not change the legal obligations of the parties. The first portion of Section 10(c) merely restates obligations that either party to the contract would have as a matter of law, even absent such a provision. The second clause similarly does not contain any new obligations and does not affect the reciprocity in Sections 10(a) and (b).

Sladco also contends that the insurance requirements found in the contract are not reciprocal. Indeed, the Master Service Contract places a series of insurance requirements on Sladco that are not likewise imposed on ADTI. Despite this fact, however, the insurance requirements cannot, according to circuit precedent, be said to create additional liabilities sufficient to implicate the prohibitions of 905(b). We have rejected the argument that differing insurance obligations destroys the reciprocity of indemnity provisions. *Sumrall v. Ensco Offshore*

*Co.*, 291 F.3d 316, 325 n.12 (5th Cir. 2002) ("We have determined that differing insurance obligations do not create additional indirect liability sufficient to implicate the prohibitions of subsection 905(b)").

In support of its position, Sladco cites *Falcon Operators, Inc. v PMP Wireline Services, Inc.*, an unpublished district court decision which found indemnity clauses void under 905(b) because, among other reasons, the contract required only one party to procure insurance. We find Sladco's reliance on this case unpersuasive. Not only are we not bound by such precedent, but, in addition, this Court has explicitly rejected its conclusion. *See Sumrall*, 291 F.3d at 324-25; *see also Diamond Offshore Company*, 302 F.3d at 548. The fact that the insurance provision of the Master Service Contract required Sladco to procure insurance, but that ADTI was not required to do the same does not impact the reciprocity of the indemnity agreement. *Diamond Offshore Company*, 302 F.3d at 548.

Sladco essentially asks that we overrule our decisions in *Sumrall* and *Diamond*, arguing that the holdings in those cases were reached in error. Even if we agreed with Sladco's assertion, which we do not, it is well established that a panel of this Court cannot overrule the decision of another panel. *Central Pines Land Co. v. United States*, 274 F.3d 881, 893 (5th Cir. 2001).

In support of its position, Sladco also points to the reasoning found in *Ogea v. Loffland Brothers Company*, 622 F.2d 186 (5th Cir. 1980), *Klepac v. Champlin Petroleum Co.*, 842 F.2d 746 (5th Cir. 1988), and *Tullier v. Halliburton Geophysical Services, Inc.*, 81 F.3d 552 (5th Cir. 1996). According to Sladco, these cases support its argument that the indemnity obligations at issue are not reciprocal. In so arguing, however, Sladco ignores the key factual distinction between this series of cases and the case at hand. Judge Jones, the author of the *Tullier* decision,

-13-

when summarizing this body of case law, noted that "The controlling fact in *Ogea*, as in [*Tullier*], *LeBlanc*, *Klepac*, and *Woods* is the existence of 'additional assured' coverage whereby an indemnitee agreed to procure insurance coverage for the benefit of the indemnitor." *Tullier*, 81 F.3d at 554. In the case at hand, Sladco is the indemnitor; there is no contractual requirement for the indemnitee, ADTI, to purchase insurance coverage for Sladco. Therefore the "controlling fact" in this line of cases is not present.

The indemnity obligations at issue are reciprocal and enforceable according to the dictates of 33 U.S.C. 905(c). Therefore the portion of the district court's judgment related to these issues is affirmed.[5]

### III.

### CONCLUSION

As the able and thorough district court succinctly noted in summary, "the contract is a maritime contract, the OCSLA applies to this case, Louisiana law does not apply, Sanamo is subject to the LHWCA by virtue of the OCSLA, the indemnity agreement between ADTI and Sladco is valid, and Ensco is a party contracting with ADTI. Accordingly, ADTI and Ensco are entitled to defense and indemnity as a matter of law." For the foregoing reasons, the judgment of the district court is AFFIRMED. We REMAND to the district court for a determination regarding the amount of attorney fees owed.

---

[5] Sladco argues that Ensco's indemnity claims fail for the same reasons ADTI's fail. However, as described above, Sladco's arguments proved unavailing. Under the Master Service Agreement, Sladco agreed to indemnify and hold harmless, not only ADTI, but also a series of other parties, including "all other parties contracting with Contractor"; because Ensco is one of the "other parties contracting with Contractor," Sladco is obligated to protect, defend, indemnify and hold harmless Ensco as well as ADTI.