**In re Michael A. RAGO, Debtor.**

**Bankruptcy No. 90 B 2284.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Nov. 23, 1992.

Mayer Y. Silber, Special Asst. U.S. Atty., M. Scott Michel, U.S. Trustee, Patricia Marshall, Special Asst. Atty. Gen., Revenue Litigation Div., State of Illinois Center, and Dist. Director, I.R.S., Chicago, IL, D. Patrick Mullarkey, Chief, Civil Trial Section, Northern Region, Dept. of Justice, Tax Div., Washington, D.C., for U.S.

Allan J. DeMars, Chicago, IL, trustee.

## MEMORANDUM OF DECISION

EUGENE R. WEDOFF, Bankruptcy Judge.

This Chapter 7 case is before the court on the motion of the United States of America to allow a claim of the Internal Revenue Service as timely filed. The trustee has responded in opposition to the motion, and both parties have briefed the matter. For the reasons stated below, the motion is denied, but the trustee is instructed that the late filing of the IRS's claim does not deprive the claim of its priority under 11 U.S.C. § 726(a)(1).[1]

### Findings of Fact

The relevant facts are undisputed. The debtor began this case as a voluntary case under Chapter 11 of the Bankruptcy Code

---

1. To reduce complexity, this opinion sometimes refers to the filing of "claims," rather than the technically accurate "proofs of claim." Thus, "timely filed claim" replaces the more cumbersome "claim for which proof was timely filed."

(Title 11, U.S.C., the "Code"), but converted it to one under Chapter 7 of the Code. Notice was given to all scheduled creditors of this conversion, and of the date set for a meeting of creditors pursuant to Section 341(a) of the Code. The initial notice also informed creditors that there appeared to be insufficient assets in the estate to pay a dividend. However, on January 7, 1991, a notice of possible dividend was issued to the creditors: this second notice informed the creditors that the last date for filing claims was April 8, 1991. The IRS did not receive either of the notices to creditors, because it was not listed as a creditor in the debtor's schedules. The failure of the debtor to list the IRS was, in turn, due to the debtor's lack of knowledge that the IRS had any claim against him. It was not until May 20, 1991, that the IRS began the audit of the debtor's 1988 tax liability that ultimately resulted in claims for unpaid taxes.

On January 2, 1992, the debtor filed a proof of claim on behalf of the IRS, stating the amount as "$5,000 Estimated (to be liquidated)." On January 31, 1992, the IRS filed its own proof of claim, in the amount of $18,836 for 1988 individual income taxes, $2,427.32 for interest on the taxes, and $942 for penalties on the taxes. The IRS asserted that the taxes and interest were unsecured priority claims under Section 507(a)(7) of the Code, and that the penalties were an unsecured general claim.

The trustee has not objected to the IRS claim, but the debtor has done so, by way of a "Complaint to Determine Liability for Taxes," filed on May 22, 1992. This claim objection remains pending. On July 28, 1992, the trustee gave notice that he intended to commence distribution of the estate to claimants who had filed timely proofs of claim. The IRS responded with the present motion, and the trustee has withheld distribution pending the court's ruling.

### Jurisdiction

This court has jurisdiction over the pending motion pursuant to 28 U.S.C. § 1334(a) and (b), 28 U.S.C. § 157(a) and (b)(1), and Rule 2.33 of the General Rules of the United States District Court for the Northern District of Illinois. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O).

### Conclusions of Law

The pending motion of United States seeks a declaration from the court that the IRS's claim in this matter was timely filed. However, the ultimate relief sought by the motion is a determination that the IRS claim should not be barred from payment. In ruling on the motion, it is necessary to consider three issues: the timeliness of the claim, its potential to be allowed, and its relative priority.

■ **Timeliness.** The IRS claim was not timely filed, and this court cannot grant the IRS a retroactive extension of the time to file. This is plain from the applicable rules. Fed.R.Bankr.P. 3002(c) requires creditors to file proofs of claim against the estate within 90 days after the date set for the meeting of creditors, unless one of six exceptions applies. In the present case, the only applicable exception is the fifth, which governs cases in which "notice of insufficient assets to pay a dividend was given ... and subsequently the trustee notifies the court that payment of a dividend appears possible." In such circumstances, the rule directs the clerk to notify creditors (1) of the possibility of a dividend, and (2) "that they may file proofs of claim within 90 days after the mailing of the notice." Such a notice was mailed to creditors in this case on January 7, 1991, properly setting April 8, 1991 as the last date for filing proofs of claims. Another exception, the first, allows a court to extend the period for the United States to file a claim, but only on motion made "before the expiration of such period." Fed.R.Bankr.P. 3002(c)(1). The United States did not make such a motion. Finally, Fed.R.Bankr.P. 9006(b)(3) provides that the time limits of Rule 3002(c) may be enlarged by the court "only to the extent and under the conditions stated" in the rule. Thus, the court has no discretion to deem the claim of the IRS in this case timely filed. *In re Coastal Alaska Lines,*

*Inc.*, 920 F.2d 1428, 1431–33 (9th Cir.1990); *In re Global Precious Metals, Inc.*, 143 B.R. 204, 205 (Bankr.N.D.Ill.1992); *In re Chirillo*, 84 B.R. 120, 121–122 (Bankr. N.D.Ill.1988).

In arguing that the court does possess discretion to retroactively extend claim filing deadlines, the United States relies primarily on *In re Unroe*, 937 F.2d 346 (7th Cir.1991). This reliance is misplaced. *Unroe* did not involve a late filed original claim, but rather an amendment to a timely filed claim. The Seventh Circuit held in *Unroe* only that a bankruptcy court might use its discretion to allow the amended claim to relate back to the timely filed one, even if such relation back would not have been allowed under Fed.R.Civ.P. 15(c). "We leave for another case the question whether a judge in equity could permit an entirely new claim filed out of time." 937 F.2d at 350. Thus, *Unroe* had no occasion to consider the impact of Rule 9006(b)(3) in limiting the discretion of the court.

■■■ **Allowance.** However, the fact that the IRS's claim is irretrievably untimely does not resolve the question of whether that claim is entitled to payment from the estate. *In re Unroe*, 937 F.2d 346 (7th Cir.1991), like many decisions, including the opinion of this court in *In re Chirillo*, 84 B.R. 120, 122 (Bankr.N.D.Ill.1988), assumes that a late filed claim is disallowed.[2] This assumption is mistaken. As pointed out by both the trustee in this case and the bankruptcy judges of Minnesota, in *In re Hausladen*, 146 B.R. 557 (Bankr.D.Minn.1992), disallowance of claims is governed by Section 502 of the Code. Section 502(a) provides that a claim is deemed allowed unless

an objection is made, and Section 502(b) states that if an objection is made, the court shall allow the claim except to the extent that it fits into eight specific categories, none of which includes untimeliness in filing proof of the claim. Furthermore, as discussed below, Section 726(a)(3) of the Code makes specific provision for payment of an "allowed unsecured claim proof of which is tardily filed." *See In re Coastal Alaska Lines, Inc.*, 920 F.2d 1428, 1430 (9th Cir.1990) (late filed claim accorded Section 726(a)(3) priority). It is plain, then, that the untimeliness of the filing of a proof of claim does not in itself cause disallowance of the claim. Rule 3002, which governs the timeliness of creditor claims in Chapter 7, states in section (a) that "an unsecured creditor ... must file a proof of claim ... in accordance with this rule for the claim ... to be allowed." This rule, insofar as it purports to require disallowance of late filed creditor claims, contravenes Sections 502 and 726 of the Code, and thus cannot be enforced. See *Hausladen*, 146 B.R. at 560 n. 5, and the cases cited therein. To the extent that the IRS claim is not disallowed on the basis of the debtor's objection (made pursuant to Section 502(b)(1)), the IRS has an allowed claim. 11 U.S.C. § 502(a).

**Priority.** Because the IRS claim may be allowed, it is necessary to determine its potential priority, in order that the trustee can determine to what extent to distribute assets of the estate. This presents a difficult question of the interpretation of Section 726(a) of the Code, which governs priority of distribution in Chapter 7 cases.[3]

**2.** Among the other decisions that equate untimeliness with disallowance are *In re Davis*, 936 F.2d 771, 772–73 (4th Cir.1991); *In re Johnson*, 901 F.2d 513, 522 (6th Cir.1990); *In re Tomlan*, 907 F.2d 114 (9th Cir.1990), affirming and adopting the decision of the district court reported at 102 B.R. 790 (E.D.Wash.1989); and *In re Mayville Feed & Grain, Inc.*, 123 B.R. 245, 247 (Bankr.E.D.Mich.1991), citing *3 Collier on Bankruptcy*, ¶ 502.02[1] (15th ed. 1990).

**3.** 11 U.S.C. § 726, "Distribution of property of the estate," provides in pertinent part as follows:

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title;

(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—

　(A) timely filed under section 501(a) of this title;

　(B) timely filed under section 501(b) or 501(c) of this title; or

　(C) tardily filed under section 501(a) of this title, if—

　　(i) the creditor that holds such claim did not have notice or actual knowledge of the

*In re Virtual Network Services Corp.*, 98 B.R. 343, 344–45 (N.D.Ill.1989), *aff'd,* 902 F.2d 1246 (7th Cir.1990) (limiting application of Section 726 to cases under Chapter 7). Section 726(a) determines priority based on two factors. The first factor is the nature of the claim. The highest priority of distribution is accorded by Section 726(a)(1) to the "priority" claims designated by Section 507 of the Code, among which are the tax liabilities that make up the bulk of the IRS claim in this case. Next, are "general" unsecured claims—that is, claims which are not accorded special priority by Section 507.[4] General unsecured claims are dealt with by subsections (a)(2) and (a)(3) of Section 726. Finally, Section 726(a)(4) accords the lowest claim priority to noncompensatory fines, penalties, forfeitures, and damage awards, including the relatively small penalty that is part of the IRS claim here.[5]

■ In addition to distinguishing claims by their nature, Section 726 also defines priority of distribution according to a second factor: the timeliness of claim filing. Section 726(a)(2) accords the higher priority to two classes of claims: (a) claims that are filed on time, regardless of whether the claim is filed by the creditor holding the claim or by another party on behalf of the creditor; and (b) claims filed by creditors who did not receive notice or have knowledge of the bankruptcy in time for timely filing, but who nevertheless filed their claims in time to permit payment—a class of claims that can be called "effective late filings." Section 726(a)(3) accords a lower priority to what can be called "ineffective late filings"—late claims filed by creditors who did have timely notice or knowledge of the bankruptcy, as well as by creditors who lacked timely notice or knowledge, but did not file their claims in time to permit payment.[6]

■ The question raised by the present case is whether the timeliness priorities set out in subsections (a)(2) and (a)(3) apply to Section 507 priority claims. There is an argument—advanced here by the trustee— that they do. Section 726(a)(3) accords third priority of distribution to "any allowed unsecured claim" that (1) is filed by a creditor (hence the reference to Section 501(a)), (2) is filed late, and (3) does not fall within the "effective late filing" provisions of subsection (a)(2)(C). Nothing in the express language of Section 726(a)(3) limits its application to general claims. Thus, it can be read as applying to all claims, priority as well as general. *In re Kragness*, 82 B.R. 553, 556–57 (Bankr.D.Or.1988); Rob-

---

case in time for timely filing of a proof of such claim under section 501(a) of this title; and
  (ii) proof of such claim is filed in time to permit payment of such claim;
(3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection;
(4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim. . . .

4. Use of the term "general" to refer to a claim in bankruptcy that has no special priority is common. *See, e.g., In re Richards,* 141 B.R. 751 (W.D.Okla.1992) ("Richards maintains that his income tax claim does not qualify as a § 507(a)(7)(A) priority claim, and should only

be allowed as a general unsecured claim."). This distinction between "general" and "priority" was also in common use prior to enactment of the Bankruptcy Code. *See, e.g., Home Indemnity Co. v. F.H. Donovan Painting Co.,* 325 F.2d 870, 872 (8th Cir.1963) ("Surety filed a claim in the bankruptcy court for a total of $90,141.68; $17,974 was allowed as a wage priority claim, and $64,611.43 was allowed as a general unsecured claim.").

5. Section 726(a) goes on to provide lower priorities for the payment of postpetition interest on claims in the first four categories and for payment of any surplus to the debtor.

6. "Effective" and "ineffective," in this context are thus used to distinguish the two categories of late filed claims: (1) late claims that are paid as though they were timely filed ("effective") and (2) late claims that are paid at a lower priority than timely filed claims ("ineffective"). "Effective" does not mean "allowed." As discussed above, late filed claims, whether "effective" or "ineffective," cannot be disallowed because of their untimeliness.

ert E. Ginsberg, Bankruptcy § 10.05[c] (2d ed. 1989) ("[A] late-filed unsecured claim that is otherwise entitled to priority ... is placed behind timely-filed general unsecured claims.").[7]

Actually, the trustee's reading of the statute would place only "ineffectively" late filed priority claims behind timely-filed general claims. Under the trustee's reading, Section 726(a)(1) does not apply to late filed priority claims, and thus such claims cannot be deemed "specified" in that subsection. Accordingly, late filed priority claims would not be excluded from subsection (a)(2), and priority claims that were effectively late filed would be paid, together with timely filed general claims, under subsection (a)(2)(C). *Kragness* appears so to hold. 82 B.R. at 557.[8] In the present case, the IRS claims was effectively late filed. The IRS was never notified of the bankruptcy, and had no knowledge of the case, until after it commenced its audit—more than a month after the time for filing claims had elapsed. Thus, even under the trustee's reading of Section 726(a), the IRS would be at least entitled to share pro rata with general unsecured creditors.

However, the trustee's reading presents several difficulties. First, it produces an anomalous result. Under Section 726(a)(2), an effectively late filed *general* claim receives exactly the same treatment as a timely filed general claim. Yet under the trustee's interpretation, an effectively late filed *priority* claim is penalized, losing its (a)(1) status to share with timely filed general claims in subsection (a)(2). There is no apparent policy justification for this disparate treatment.

Second, and more significantly, the trustee's reading contradicts the language of Section 726(a)(1), which provides first priority of distribution to priority claims ("claims of the kind specified in ... section 507") without any limitation to priority claims that are timely filed. Thus, the language of subsection (a)(1), on its face, directs payment of all priority claims, timely as well as untimely filed. Several recent cases have so interpreted the statute. *United States v. Cardinal Mine Co.*, 916 F.2d 1087, 1091–92 (6th Cir.1990); *In re Horner*, 1991 WL 353297 (Bankr.N.D.Cal. Sept. 21, 1991); *In re MacLochlan*, 134 B.R. 2, 3–4 (Bankr.N.D.Ohio 1991). The *Cardinal Mine* reading of Section 726 results in a straightforward scheme of priorities.[9]

**7.** The trustee's position, though not his argument, is also supported by *In re Pacific Atlantic Trading Co.*, 1992 U.S.Dist. LEXIS 15099 (N.D.Cal.1992). The reasoning of *Pacific Atlantic Trading Co.* can be summarized as follows: (1) in order to be deemed allowed under Section 502(a) of the Code, a claim must be "filed under section 501"; (2) an untimely filed claim is not "filed under section 501," and so cannot be allowed under Section 502; (3) an untimely filed tax claim is not entitled to priority under Section 507(a)(7), because that subsection applies only to "allowed" unsecured claims; and so (4) an untimely filed tax claim, stripped of its priority, should be paid as an untimely filed general claim, under Section 726(a)(3). 1992 U.S.Dist. LEXIS 15099 at *5–*8. This reasoning is not persuasive. First, the language of Section 501 does not require timely filing of claims. Second, as pointed out above, Section 726(a)(3) makes express provision for the payment of any "allowed unsecured claim proof of which is tardily filed." Thus, late filing cannot be grounds for disallowance of a claim. Third, if late filing were grounds for disallowance, a late filed tax claim could not be paid pursuant to Section 726(a)(3), because, as the language quoted above indicates, that subsection is applicable only to "allowed" unsecured claims.

**8.** The trustee's reading would therefore lead to the following treatment of claims under Section 726:

First, under Section 726(a)(1), timely filed priority claims would be given first priority of distribution, ahead of all general claims, but all late filed priority claims would be excluded from this subsection.

Second, under Section 726(a)(2), effectively late filed priority claims would share pro rata with timely filed general claims, and effectively late filed general claims.

Third, under Section 726(a)(3), ineffectively late filed priority claims would be paid pro rata with ineffectively late filed general claims.

Fourth, under Section 726(a)(4), noncompensatory fines and penalties would receive the lowest claim priority.

**9.** This reading would lead to the following treatment of claims under Section 726:

First, under Section 726(a)(1), all priority claims, regardless of time of filing, would be given first priority of distribution, ahead of all general claims.

Second, under Section 726(a)(2), general claims in the category of "effective late filings" would share pro rata with timely filed general claims.

Third, the trustee's reading of subsection (a)(2) and (a)(3) is strained. This reading interprets subsection (a)(3) as including all late filed allowed claims that are not within the "effectively" late filed category of subsection (a)(2)(C), *i.e.,* ineffectively late filed claims of all sorts. Yet subsections (a)(2) and (a)(3) are more reasonably read as a unit, with the exclusions of (a)(2) also applying to (a)(3). Thus, since priority claims (specified in subsection (a)(1)) are expressly excluded from subsection (a)(2), they should be read as being excluded from subsection (a)(3) as well. Indeed, in connection with subsection (a)(4) claims, this interpretation is required to avoid an absurd result. The claims accorded (a)(4) priority—noncompensatory fines and penalties—are, like priority claims, expressly excluded from subsection (a)(2). However, also like priority claims, subsection (a)(4) claims are not expressly excluded from subsection (a)(3). Unless subsection (a)(3) is understood as incorporating the exclusions of subsection (a)(2), a late filed claim for a noncompensatory penalty would be accorded (a)(3) priority: it would fit under the trustee's reading of subsection (a)(3) as an allowed unsecured claim that (1) is filed by a creditor, (2) is filed late, and (3) does not fall within the "effective late filing" provisions of subsection (a)(2)(C). The result of such a reading is that a late filed claim for a noncompensatory penalty would receive a higher priority of distribution, under subsection (a)(3), than would a timely filed claim of the same nature, under subsection (a)(4).

Finally, to the extent that the language of Section 726 is ambiguous, reference to legislative history is appropriate. *Toibb v. Radloff,* — U.S. —, —, 111 S.Ct. 2197, 2200, 115 L.Ed.2d 145 (1991). The legislative history of Section 726 contradicts the trustee's reading of the statute and supports the reading of *Cardinal Mine.* Both the House and Senate reports accompanying the legislation that became the Code contain identical language describing Section 726:

First, property is distributed among priority claimants, as determined by section 507, and in the order prescribed by section 507. Second, distribution is to general unsecured creditors. This class excludes priority creditors and the two classes of subordinated creditors specified below. The provision is written to permit distribution to creditors that tardily file claims if their tardiness was due to lack of notice or knowledge of the case. Though it is in the interest of the estate to encourage timely filing, when tardy filing is not the result of a failure to act by the creditor, the normal subordination penalty should not apply. Third distribution is to general unsecured creditors who tardily file. Fourth distribution is to holders of fine, penalty, forfeiture, or multiple, punitive, or exemplary damage claims. These claims are disallowed entirely under present law. They are simply subordinated here.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 383 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 97 (1978). This commentary indicates that Section 726(a)(1) was intended to apply to all Section 507 claims: timeliness of filing a proof of claim is not discussed in connection with Section 726(a)(1). On the other hand, Sections 726(a)(2) and (3), which do deal with untimeliness, are each said to apply only to "general unsecured creditors," not priority claimants under Section 507, who are said to be "excluded" from 726(a)(2).

This is not to say that the *Cardinal Mine* reading of Section 726(a) is itself without difficulty. By requiring payment of all priority claims first, regardless of their timeliness, this reading imposes no penalty on holders of priority claims who have timely notice of the bankruptcy, but negligently or even deliberately fail to file their claims within the deadlines imposed by the bankruptcy rules. To sanction such disregard of the rules contradicts a firmly established policy of encouraging finality in the administration of claims. *In re Evanston Motor Co.,* 26 B.R. 998, 1005 (N.D.Ill. 1983), *aff'd,* 735 F.2d 1029 (7th Cir.1984)

---

Third, under Section 726(a)(3), only general claims in the category of "ineffective late filings" would be given third priority.

Fourth, under Section 726(a)(4), noncompensatory fines and penalties would be paid.

("Trustees, creditors, and even bankruptcy judges are entitled to some measure of finality in bankruptcy proceedings."); *In re Johnson*, 84 B.R. 492, 494 (Bankr.N.D.Ohio 1988), *aff'd*, 901 F.2d 513 (6th Cir.1990) ("The bar date for filing proofs of claim is to provide the debtor and its creditors with finality.").[10] Furthermore, this reading would appear to direct first priority payment even to claims filed after a distribution of the estate's assets. As the court in *Kragness* observed:

> There is a practical necessity for finality in filing and paying priority claims. Without construing Section 726(a)(1) to require timeliness as a condition to priority in payment, a priority claim filed at any time prior to termination of the case would have to be satisfied before any other timely non-priority claim is paid. If any claim had been paid before the tardy priority claim was actually filed, recipients of disbursed funds would have to return sufficient funds, pro rata, to satisfy the tardy priority claim. That situation would be unworkable.

82 B.R. at 556.

Undoubtedly, Section 726 could have been better drafted.[11] However, the difficulties in the *Cardinal Mine* reading are not insurmountable. All of the priorities set forth in Section 726(a) are subject to an express exception: property of the estate is to be distributed as set forth in Section 726(a) "[e]xcept as provided in section 510 of this title." Section 510, in turn, sets forth grounds for subordination. Subsections (a) and (b) deal, respectively, with subordination agreements and subordination of claims involving securities of the debtor. Subsection (c), however, has a wider scope, providing in paragraph (c)(1) that "after notice and a hearing, the court may ... under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part or another allowed claim...." In *In re Virtual Network Services Corp.*, 902 F.2d 1246 (7th Cir.1990), the Court of Appeals employed Section 510(c)(1) to affirm a determination by the district court that a claim for tax penalties owing to the IRS should be subordinated to the claims of general unsecured creditors in a Chapter 11 liquidation. After a careful analysis of the statute and its legislative history, the Court concluded (1) that "Congress intended the courts to 'develop' the 'principles of equitable subordination,'" (2) that these principles are "broader than the doctrine which developed prior to § 510(c)(1)'s enactment," and (3) that "equitable subordination no longer requires, in all circumstances, some

---

10. Under the Bankruptcy Act of 1898, a policy of finality was an expressed part of the statutory scheme, with a claims filing deadline set forth in Section 57(n) of the Act. 11 U.S.C. § 93(n) (repealed Oct. 1, 1979). The courts generally interpreted this filing deadline as an absolute bar. *Hoos & Co. v. Dynamics Corp. of America*, 570 F.2d 433, 439 (2d Cir.1978) ("[The] clear Congressional intent to require filing of valid proofs of claim with the time limits that it has set is sufficient to preclude us from finding exceptions to these rules in the supposed interest of equity."); *In re Pigott*, 684 F.2d 239, 242 (3d Cir.1982) ("The law is settled in the Third Circuit that § 57(n) ... is to be strictly construed); *Wilkens v. Simon Brothers, Inc.*, 731 F.2d 462, 464 (7th Cir.1984) (per curiam) (collecting cases holding that the claims filing period under the Act operated as a statute of limitations).

11. The best way of dealing with late filed priority claims would be to distinguish in the statute between "effective" and "ineffective" late filings, in a manner parallel to the treatment accorded general unsecured claims by Sections 726(a)(2) and (a)(3). The statute would then provide as follows:

> First, under Section 726(a)(1), all timely filed priority claims, and all "effectively late filed" priority claims would be given first priority of distribution, ahead of all general claims.
> Second, under Section 726(a)(2), all timely filed general claims and all effectively late filed general claims would be paid, before any ineffectively late filed claims.
> Third, under Section 726(a)(3), "ineffective late filings" for both priority and general claims would be given third priority.
> Fourth, under Section 726(a)(4), noncompensatory fines and penalties would be paid.

This scheme allows effectively late filed claims to be paid the same as timely filed claims, regardless whether the claim is general or priority; it imposes a penalty on holders of both priority and general claims who file late despite adequate notice of the bankruptcy, and it would not require undoing of distributions to satisfy late claims. Unfortunately, the statutory language is not reasonably susceptible to this interpretation.

inequitable conduct on the part of the creditor." 902 F.2d at 1249–50. The basis for the equitable subordination in *Virtual Network* was a determination that a tax penalty, in the context of a liquidation, served no deterrent purpose, and penalized the creditors of taxpayer's estate rather than the taxpayer.

■ This understanding of the equitable subordination provision of Section 510 makes the section applicable to the situation of late filed priority claims. Where, despite adequate notice or knowledge of the bankruptcy, a priority creditor fails to file a timely proof of claim, it may be equitable to subordinate the creditor's claim to claims that were timely filed. Since general considerations of fairness will support subordination even without inequitable conduct on the part of the creditor, an unexcused delay by the creditor in filing a proof of claim certainly provides a basis to subordinate. Moreover, based on general considerations of fairness, it may be equitable to subordinate a late filed priority claim even where the creditor lacked adequate notice or knowledge, if a distribution has already taken place and an undoing of the distribution would be excessively burdensome.[12] In either situation, the notice and hearing provision of Section 510(c) will assure that the priority creditor can present the arguments against subordination to the court. Equitable subordination, then, under Section 510(c)(1), eliminates difficulties that might otherwise result from

the *Cardinal Mine* reading of Section 726(a).

■ *The debtor's claim.* With the interpretation of Section 726(a) established, one final matter needs to be addressed: the status of the debtor's claim filed on behalf of the IRS. This claim, like the subsequent IRS claim, was filed late.[13] However, as with the IRS claim, the late filing does not deprive the claim of its priority status under Section 726(a)(1). Just as application of Section 726(a)(1) is not limited to timely filed priority claims, so is its application not limited to priority claims filed by creditors. Fed.R.Bankr.P. 3004 provides that a proof of claim filed by a debtor shall be superseded by "[a] proof of claim filed by a creditor pursuant to Rule 3002." However, Rule 3002 includes the timeliness requirements that were not met by the IRS claim. Although the provision of Rule 3002 that purports to disallow untimely claims is in conflict with the Bankruptcy Code, there is no conflict with the Code in denying supersession to untimely filed claims.[14] Thus there is no supersession here. Both the debtor's and the IRS's claim therefore stand as allowed in this case, and, since they arise out of the same debt, it would be appropriate either for the debtor to withdraw his proof of claim or for the trustee to object to it.

### Conclusion

For the reasons stated above, the motion of the United States to Allow Claim as Timely Filed is denied, but the trustee is

---

**12.** Another factor that might argue in favor of equitable subordination in this context would be the potential for the creditor's collecting any unpaid claim amounts from the debtor's postpetition earnings, pursuant to the nondischargeability provisions of Section 523(a)(1) and (a)(3).

**13.** Fed.R.Bankr.P. 3004 provides that "[i]f a creditor fails to file a proof of claim on or before the first date set for the meeting of creditors called pursuant to § 341(a) of the Code, the debtor or trustee may do so in the name of the creditor, within 30 days after expiration of the time for filing claims prescribed by Rule 3002(c)." As noted above, the deadline for creditors to file claims in this case, pursuant to Rule 3002(c), was April 8, 1991, so that June 8, 1991

would have been the last date for a debtor's filing under Rule 3004. The debtor's claim on behalf of the IRS was filed on January 2, 1992. Courts may have the power to extend the deadline for filing claims by non-creditors, since Fed.R.Bankr.P. 9006(b) does not prohibit enlargement of time for filing claims under Rules 3004 and 3005. However, no such request was made by the debtor in the present case.

**14.** Moreover, allowing an untimely filed creditor claim to supersede a claim timely filed by the debtor would have inequitable consequences: a general claim timely filed by the debtor would be entitled to priority under Section 726(a)(2), whereas an untimely creditor claim might only be entitled to Section 726(a)(3) priority.

given no authorization to distribute assets of the estate until resolution of the debtor's objection to the IRS claim at issue. To the extent the claim is allowed, it is entitled to payment pursuant to Section 726(a)(1) and (a)(4). An order will be entered in conformity with this opinion.