149 B.R. 746 (1993)
In re CORPORACION DE SERVICIOS MEDICO-HOSPITALARIOS DE FAJARDO, INC., Debtor.
Carlos J. LASTRA, Trustee, Movant,
v.
BLOOD SERVICES PROGRAM OF the AMERICAN RED CROSS, Respondent/Claimant.
Carlos J. LASTRA, Trustee, Movant,
v.
ORGANON TEKNIKA CORP., Respondent/Claimant.
Carlos J. LASTRA, Trustee, Movant,
v.
RIMACO, INC., Respondent/Claimant.
Carlos J. LASTRA, Trustee, Movant,
v.
UMECO, INC., Respondent/Claimant.
Carlos J. LASTRA, Trustee, Movant,
v.
CESAR CASTILLO, INC., Respondent/Claimant.
Carlos J. LASTRA, Trustee, Movant,
v.
CENTRAL MEDICAL WASTE SERVICE, Respondent/Claimant.
Bankruptcy No. 85-00553.
United States Bankruptcy Court, D. Puerto Rico.
January 6, 1993.
Richard A. Lee, San Juan, PR, for Trustee.
Steven Yova, Durham, NC, for Organon Teknika Corp.
Ramon A. Alfaro, San Juan, PR, for UMECO, Inc. and Cesar Castillo, Inc.
Rafael J. Vazquez Gonzalez, Vazquez Colon, Guzman Geigel & Alfaro, San Juan, *747 PR, for Blood Services Program of the American Red Cross.
Pedro J. Diaz Garcia, Moreda & Moreda, San Juan, PR, for Rimaco, Inc.
Gilberto Rivera Arreaga, Bayamon, PR, for Central Medical Waste Service.

DECISION AND ORDER
ARTHUR N. VOTOLATO,[*] Bankruptcy Judge.

BACKGROUND
On November 12, 1992, this Court held a hearing on the Chapter 7 Trustee's objections to claims, and the responses of the interested creditors. We took under advisement six[1] of the disputed claims which were objected to on the basis that proofs of claim were not timely filed under Fed. R.Bankr.P. 3002(c). The claims here at issue are those of: (1) Organon Teknika Corp. (claim no. 149); (2) Blood Services Program of the American Red Cross (claim no. 143); (3) Central Medical Waste Service (claim no. 167); (4) Umeco, Inc. (claim no. 163); (5) Cesar Castillo, Inc. (claim no. 164); and (6) Rimaco, Inc. (claim no. 155), collectively "the Creditors." Each of these Creditors, together with the Trustee, submitted pretrial orders containing agreed statements of fact which, for the purposes of this decision, contain the following similar facts:
1. Pursuant to Fed.R.Bankr.P. 3002(c), the last day for filing proofs of claim in this Chapter 7 case was May 28, 1991.
2. The amount claimed by the Creditors correctly reflects Debtor's indebtedness to them.
3. Notice of the conversion of the case from Chapter 11 to Chapter 7, the first meeting of creditors under Chapter 7 and the bar date for filing proofs of claim was given on January 31, 1991, one day after the conversion was ordered.
4. None of the within Creditors were included on the list of creditors to whom the notice described in paragraph 3 above was given.
5. The within Creditors were first included on the list to whom notice of the continuation of the § 341 meeting was given, on July 19, 1991.
6. None of these Creditors were ever given written notice of the bar date for filing proofs of claim, until the Trustee's objection to such claims was filed on September 18, 1992.
7. At the time the within Creditors filed their proofs of claim, no disbursement had been made by the Chapter 7 Trustee to any preconversion unsecured creditors. Organon Teknika filed its proof of claim in the amount of $4,902.25 on August 7, 1991; the American Red Cross filed its proof of claim in the amount of $19,037.83 on or about June 26, 1991; Central Medical Waste filed its proof of claim in the amount of $15,601.97 on June 12, 1992; Umeco filed its proof of claim in the amount of $16,897.36 on June 2, 1992; Cesar Castillo filed its proof of claim in the amount of $10,374.50 on June 2, 1992; and Rimaco filed its proof of claim in the amount of $10,736.40 on November 13, 1991.
Other than Rimaco's, none of the other pretrial orders contain any statement as to when the particular creditors first became aware of the bankruptcy proceedings. As to Rimaco, the parties stipulate that Rimaco became aware of the bankruptcy in February, 1991.
In order to gain some perspective regarding the activity of this particular Debtor while under the protection of the bankruptcy court, we note that the petition was originally filed in 1985 as a Chapter 11 case, operating as a debtor-in-possession. After years of acrimony and litigation with the Department of Health and other governmental agencies, the Chapter 11 Debtor,[2] with the consent of the unsecured creditors' *748 committee, finally obtained a confirmed plan of reorganization on February 2, 1990. Less than one year later however, under the direction of Max Oliveras, and with the Debtor unable or unwilling to carry out the terms of the plan, on January 30, 1991 the case was converted to Chapter 7, a Trustee was appointed, and the case has remained in Chapter 7 since that time.
At the November 1992 hearing, it was represented that the within Creditors are all post-confirmation, pre-conversion creditors, who provided goods and/or services to the Debtor during its brief post-confirmation Chapter 11 lifetime. Thus, when the Court gave notice of the conversion of the case to Chapter 7, of the first § 341 meeting of creditors, and of the bar date for the timely filing of proofs of claim, said Creditors were not then included on the Court's matrix, as the Chapter 7 Trustee had not updated it from its Chapter 11 record.

DISCUSSION
The narrow legal issue presented is whether, on the facts presented above, the within Creditors' claims should be: (1) disallowed as untimely filed under Fed. R.Bankr.P. 3002(c); (2) allowed, but only as claims against the surplus remaining after payment of all allowed and timely filed claims and administrative expenses as provided by 11 U.S.C. § 726(a)(3) and Fed. R.Bankr.P. 1019(7); or (3) whether such claims should be allowed in pari passu with all other unsecured claims, including those timely filed, pursuant to § 726(a)(2)(C).
While the problem in addressing late filed claims is not novel to bankruptcy courts nationally, this is by no means a settled area of the law,[3] having received mixed treatment throughout the bankruptcy court system.[4] Moreover, neither this Court nor any of its appellate authorities have previously addressed the matter at hand.[5]
A. The relevant Federal Rules of Bankruptcy Procedure
The starting point for examining the issue is Fed.R.Bankr.P. 3002, entitled "Filing Proof of Claims or Interest." Specifically, Rule 3002(c) provides in pertinent part:
(c) Time for Filing. In a chapter 7 liquidation, . . . a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors called pursuant to § 341(a) of the Code.
There are six exceptions to this 90 day deadline, none of which apply in this instance. Moreover, the rule contains no provision for the situation at hand, i.e. where a creditor does not receive notice of *749 the first § 341 meeting or of the bar date for the timely filing of claims.[6]
Fed.R.Bankr.P. 2002(f) contains the notice requirements upon the conversion of a case. In relevant part it provides: "the clerk, or some other person as the court may direct, shall give the debtor, all creditors, and indenture trustees notice by mail of, . . ., (2) the dismissal or the conversion of the case to another chapter; (3) the time allowed for filing claims pursuant to Rule 3002." There is no question here that the within Creditors were not on the list of creditors who received the required notice under Rule 2002(f).
Finding no exception for no-notice, late-filed claims in Rule 3002(c), the Trustee next refers us to Fed.R.Bankr.P. 9006(b)(3) which provides that "the court may enlarge the time for taking action under Rules . . . 3002(c) . . . only to the extent and under the conditions stated in those rules." Thus, the Trustee argues, and we agree, that the "excusable neglect" standard contained in Rule 9006(b)(1) is not available to the within Creditors in the context of a Chapter 7 case.
B. The Statutory Framework
However, the bankruptcy rules are but one source of authority governing the filing of claims in Chapter 7 cases and, for the most part, they concern procedural as opposed to substantive rights.
The bankruptcy court in In re Columbia Ribbon & Carbon Mfg. Co., Inc., 54 B.R. 714 (Bankr.S.D.N.Y.1985) said, in reconciling Bankruptcy Rule 3002 with the pertinent code section, that:
[O]n the basis of this reference [the reference contained in the Advisory Committee Note to § 726(a)(2)(C) discussed in footnote 6 above], the absence of any provision in Rule 3002(c) governing no-notice claims, and the placement of the no-notice creditor provision in a section of the Code providing for distribution[,] that the omission of a rule must be viewed as intentional. It is an expression of opinion by the Advisory Committee on the Bankruptcy Rules that no rule was appropriate, apparently because Code § 726(a)(2)(C) was either viewed as a statute of limitation or as a matter of substantive law. Id. at 718. See also In re Rago, [149 B.R. 882, 1992 WL 410281] 1992 Bankr. LEXIS 1855, No. 90 B 2284 (Bankr.N.D.Ill., November 23, 1992) ("This rule [3002(c)] insofar as it purports to require disallowance of late filed creditor claims, contravenes Sections 502 and 726 of the Code, and thus cannot be enforced." Id. [at 885, 1992 WL 410281 at *2] at *5).
11 U.S.C. § 726 delineates the priority of distribution of property of the estate in a chapter 7 liquidation. Significantly, § 726(a)(2)(C) authorizes the payment of tardily filed unsecured claims on the same tier as timely filed unsecured claims, where such delay is a result of: "(i) the creditor . . . not hav[ing] notice or actual knowledge of the case in time for timely filing of a proof of claim; and (ii) proof of such claim is filed in time to permit payment of such claim."
Thus, to interpret Rule 3002(c) as setting an absolute deadline for the filing of claims in a Chapter 7 case in order for them to qualify otherwise as allowable, would render Code § 726(a)(2)(C) meaningless. See U.S. v. Cardinal Mine Supply, Inc., 916 F.2d 1087, 1089 (6th Cir.1990) ("Certainly section 726(a)(3) contemplates that some tardily filed claims can and will be filed and allowed. We cannot have a statute that specifically allows payment of tardily filed claims, and rules that prohibit their filing. Accordingly, to the extent that Rule 9006 [and 3002(c)] contradicts the statute, it [they] cannot stand." Id. at 1989).
*750 The bankruptcy court for the Northern District of Illinois recently examined the interplay between Code § 726 and Rule 3002(c). See In re Rago, 149 B.R. 882 (Bankr.N.D.Ill.1992). The Rago Court held that the assumption that a late filed claim must be disallowed is mistaken, in light of Code § 502 which contains the specific instances where a claim is to be disallowed, and none of which base disallowance on the untimeliness of the filing of the proof of claim. Id. at 885. The Court further ruled that:
It is plain, then, that the untimeliness of the filing of a proof of claim does not in itself cause disallowance of the claim. Rule 3002, which governs the timeliness of creditor claims in Chapter 7, states in section (a) that "an unsecured creditor . . . must file a proof of claim . . . in accordance with this rule for the claim . . . to be allowed."
This rule, insofar as it purports to require disallowance of late filed creditor claims, contravenes Section 502 and 726 of the Code, and thus cannot be enforced. See Hausladen, [146 B.R. 557, 560 n. 5] 1992 Bankr. LEXIS 1529 at *10 n. 5; 1992 WL 246584 at *5 n. 5, and the cases cited therein. Id.

We are disposed to agree with the authorities referenced above, particularly with their analysis that because Code § 726 expressly provides for the payment of no-notice tardily filed claims on the same tier as timely filed claims, that Rule 3002 cannot be construed as an absolute bar to the filing of claims after the 90 day deadline has passed. Instead, we hold that Rule 3002(c) simply determines whether a claim is to be classified as timely or tardily filed, for priority of distribution.
Having said this, the issue remains whether the within Creditors' claims, all tardily filed, should be paid pursuant to § 726(a)(2)(C) with those claims timely filed by general creditors, or pursuant to § 726(a)(3) as claims against any surplus, and subordinate to the timely filed claims of general creditors.
The two prong test for deciding this issue is whether: (1) "the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a)" and (2) "proof of such claims is filed in time to permit payment of such claim." 11 U.S.C. § 726(a)(2)(C). As to all of the six affected creditors, the parties have stipulated as to the satisfaction of item 2 above. Thus, we are only asked to decide whether the particular creditor had "notice or actual knowledge of the case" in time to file a timely proof of claim.
As noted earlier, the only pretrial order which contained a reference to this factor was that of Rimaco, which stated that it learned of the bankruptcy in February, 1991. Although it is not specific as to whether Rimaco, through its agents, had knowledge that the case was then a Chapter 7 and no longer in Chapter 11, since the conversion took place on January 30, 1991, we must charge Rimaco with knowledge that the Debtor was then in a Chapter 7 case. Accordingly, we rule that Rimaco has failed to satisfy § 726(a)(2)(C)(i), and is therefore placed in the § 726(a)(3) category.
As to the remaining five Creditors however, the only direct facts given in the joint pretrial orders, are that these creditors received notice of the conversion of the case and of the claims bar date, after the bar date had expired. Even had these creditors been aware of the prior Chapter 11 bankruptcy case, we do not believe this satisfies the "notice or actual knowledge of the case" language contained in § 726(a)(2)(C). The only logical interpretation of that sentence is to read the term "case" as referring to the Chapter 7 bankruptcy case, and not to the prior Chapter 11 case. We reject the Trustee's argument that once a creditor has any knowledge that a debtor is in bankruptcy, no matter how long, or under which chapter, that it thereupon assumes the continuing obligation to monitor the case throughout its lifetime, in the event a *751 conversion results. In our view, this would place an unreasonable burden on creditors, who are not receiving notices, to constantly inquire of the court about possible bar dates. Support for this conclusion is found in In re Intaco Puerto Rico, Inc., 494 F.2d at 99, wherein the First Circuit stated:
[T]he fact that the creditor may, as here, be generally aware of the pending reorganization, does not of itself impose upon him an affirmative burden to intervene in that matter and present his claim. The trustee cannot avoid his statutory responsibility under Chapter X, to formally provide the required notice, simply because of a creditor's possible familiarity with general aspects of the proceedings. As the Supreme Court has stated, the creditor has a right to assume that proper and adequate notice will be provided before his claims are forever barred. See also In re Perpetual Corp., 112 B.R. 27 (Bankr.M.D.Tenn.1990) (court held that both actual knowledge of the Chapter 11 filing and of its conversion to Chapter 7 are necessary to constitute notice for timely filing).
Accordingly, since there is no evidence, nor does there appear to be any dispute, that these five Creditors had notice or actual knowledge of the Chapter 7 case in time to file a timely proof of claim, they have satisfied § 726(a)(2)(C) and may share equally with the timely filed claims of unsecured creditors in the distribution of this estate.
Enter Judgment consistent with this opinion.
NOTES
[*] Of the District of Rhode Island, sitting by designation.
[1] Several other similar objections to claims remain pending but are not yet under advisement, as the parties requested additional time to conduct discovery.
[2] During the pendency of the Chapter 11 case, the principal shareholder of the Debtor, Dr. Carlos Lopategui, sold all of his stock to an HMCA corporation controlled by Max Oliveras Mariani, clandestinely and without the knowledge of the creditors, the United States Trustee, or the Court. We are still not sure whether this was a step by the Debtor from the frying pan into the fire, or vice-versa. This is but an illustration of the unorthodox travel of the case, vis-a-vis the creditors' ability to keep track of what has been happening with "the Debtor."
[3] Although not precisely on point, the Supreme Court has recently accepted on certiorari the matter of Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership, 943 F.2d 673 (6th Cir. 1991), cert. granted, ___ U.S. ___, 112 S.Ct. 2963, 119 L.Ed.2d 585 (1992), (a Chapter 11 case) concerning what constitutes excusable neglect under Rule 9006(b) permitting a bankruptcy court to accept an untimely proof of claim.
[4] See e.g. United States v. Cardinal Mine Supply, Inc., 916 F.2d 1087 (6th Cir.1990); In re Coastal Alaska Lines, Inc., 920 F.2d 1428 (9th Cir.1990); United States v. Cole (In re Thomas Cole), 146 B.R. 837 (D.Co.1992); In re Rago, 149 B.R. 882 (Bankr.N.D.Ill.1992); In re Hausladen, 146 B.R. 557 (Bankr.D.C.Minn.1992); In re Kelton Motors, Inc., 1990 WL 106717, 1990 Bankr. LEXIS 1535, Case No. 88-00255 (Bankr.D.Vt. June 14, 1990); In re Perpetual Corp., 112 B.R. 27 (Bankr. M.D.Tenn.1990); In re Columbia Ribbon & Carbon Mfg. Co., Inc., 54 B.R. 714 (Bankr.S.D.N.Y. 1985).
[5] In 1974, the First Circuit Court of Appeals rendered In the Matter of Intaco Puerto Rico, Inc., 494 F.2d 94 (1st Cir.1974), which considered the late filing of a claim in the context of a reorganization case under the former Bankruptcy Act. While that case provides valuable insight into the concerns of the First Circuit as to the issue of notice in bankruptcy cases, we do not believe it is directly controlling here, where different statutory sections and bankruptcy rules are at issue.
[6] In re Columbia Ribbon & Carbon Mfg. Co., Inc., 54 B.R. 714, 718 (Bankr.S.D.N.Y.1985) likewise noted the omission for "no-notice" creditors in Rule 3002(c), commenting that "[g]laringly absent from Rule 3002(c) is any provision relating to the time within which the claims of no-notice creditors are to be filed. . . . the Advisory Committee Note to that rule does contain a reference to that section [§ 726(a)(2)(C)]. . . . Reference must also be made to § 726(a)(2)(C) and (3) which permits distribution on late filed claims." (emphasis in original).