**In re SEA AIR SHUTTLE CORP., Debtor.**

**Bankruptcy No. 92–00313.**

United States Bankruptcy Court, D. Puerto Rico.

June 14, 1994.

Richard A. Lee, Chapter 7 Trustee, San Juan, PR.

Dora M. Penagaricano, San Juan, PR, for Robert S. and Betty F. Griggs.

*DECISION AND ORDER DETERMINING CLASSIFICATION/SUBORDINATION OF CLAIMS AFTER CONVERSION FROM CHAPTER 11 TO CHAPTER 7*

ARTHUR N. VOTOLATO, Bankruptcy Judge.*

Before the Court are cross motions for summary judgment by the Chapter 7 Trustee, and claimants Robert and Betty Griggs, who are the former officers, directors and shareholders of the Debtor. The present dispute concerns the classification of two claims previously designated as "superpriority" and "administrative" during the Chapter 11 phase of the case, but for which *timely* proofs of claim were not filed after conversion to Chapter 7.

### FACTS [1] AND TRAVEL

When Sea Air Shuttle filed a voluntary Chapter 11 petition on January 22, 1992, Robert S. and Betty F. Griggs ("the Griggs") were shareholders, officers and directors of the Debtor corporation.

One week after the filing, the Debtor filed two motions seeking permission to obtain post-petition financing, pursuant to 11 U.S.C. § 364(c)(1). The Bankruptcy Court approved these requests and soon thereafter and in reliance thereon, the Griggs began advancing funds to the Debtor for its Chapter 11 operations. A total of $109,000 was advanced on a superpriority basis,[2] and $150,000 as an administrative expense.[3] On June 29, 1992, the case was voluntarily converted to Chapter 7. The Debtor filed its Chapter 7 schedules on August 26, 1992, listing the Griggs as superpriority and administrative expense claimants, and attached to the schedules were numerous receipts and correspondence between the parties, evidencing the advances made. November 2, 1992, was established as the bar date for filing claims in the Chapter 7 case.

On October 7, 1992, the Bankruptcy Court approved a settlement in the amount of $282,320 for the sale of the Debtor's airplanes, and this fund represents substantially all of the assets of the Debtor's estate.

A meeting was held on December 29, 1992, between the Griggs' counsel and the attorney

---

* For the District of Rhode Island, sitting by designation.

1. The parties agree that there are no facts in dispute and that the matter is therefore ripe for summary judgment, with only issues of law remaining to be decided.

2. These funds were advanced from February 26, 1992 through April 10, 1992.

3. These funds were paid between January 22 and June 5, 1992.

for the Trustee regarding the Griggs' alleged compliance with the terms of the financing orders. Shortly after that meeting the Griggs were notified by the Trustee that he was declining payment of these claims entirely, due to their failure to file Chapter 7 proofs of claim. In response, on February 18, 1993, and March 5, 1993, respectively, the Griggs filed motions requesting payment of their superpriority and administrative expense claims, or, alternatively, for leave to file proofs of claim out of time for said advances. The Trustee objects to both requests.

On May 12, 1993, the Court ordered the parties to present legal arguments in accordance with their stipulation that no facts are in dispute. The standard for summary judgment set forth in Fed.R.Civ.P. 56, is made applicable in bankruptcy pursuant to Fed. R.Bankr.P. 7056, and the instant controversy falls squarely within the parameters of this Rule; i.e. there being no genuine issues of material fact in dispute, the matter is ripe for summary judgment based upon the existence of only contested issues of law. *See United States Trust Co. v. Raritan River Steel Co.,* 153 B.R. 365, 371 (Bankr.D.Mass.1993).

### DISCUSSION AND ANALYSIS

The parties have identified the following issues of law:

1. Whether, after conversion of a case from Chapter 11 to Chapter 7, an otherwise valid preconversion superpriority or administrative expense claim[4] must be actually filed as a proof of claim in the superseding Chapter 7 case in order to preserve the claim?

2. If it is determined that a formal proof of claim must be filed in the chapter 7 case, then will such claim, if tardily-filed, lose its priority status?

3. Whether the Griggs' superpriority and administrative expense claims asserted dur-

ing the Chapter 11 phase of the case,[5] may constitute informal proofs of claim, which may thereafter be amended by the filing of the Chapter 7 proofs of claim?

We will address these questions in the order in which they are listed above.

*Issue 1 The need to file a proof of claim upon conversion from Chapter 11 to Chapter 7.*

Fed.R.Bankr.P. 1019 governs the filing of claims upon the conversion of a case from Chapter 11 to Chapter 7. Specifically, Rule 1019(3) provides that:

> (3) All claims *actually* filed by a creditor in the superseded case shall be deemed filed in the chapter 7 case. (emphasis added).

This rule (originally numbered Rule 1019[4]) was amended in 1987 by adding the word "actually", and the phrase "by a creditor." These amendments are especially relevant here because they clearly demonstrate that only claimholders who *in fact* filed proofs of claim in the Chapter 11 case may have their claims treated as filed in the Chapter 7 case. *All* other creditors are required to file proofs of claim in the superseding Chapter 7 case, prior to the bar date, for their claims to be considered as timely filed.

Prior to the 1987 amendments many courts allowed claims that were "deemed filed" in the Chapter 11 case to also be "deemed filed" in the converted Chapter 7 case. In *In re Crouthamel Potato Chip Co.,* 786 F.2d 141 (3d Cir.1986), the Third Circuit held that employees who had not actually filed proofs of claim in the Chapter 7 case were nonetheless protected because, while in Chapter 11 their claims were "deemed filed." The rationale was that the employees' claims were listed on the Debtor's schedules, pursuant to 11 U.S.C. § 1111(a). The Court found that the old Rule 1019 did not distinguish between

---

4. The consideration of whether such claims maintain their priority status upon conversion is the same regardless of whether we are speaking about superpriority or administrative expense claims. Therefore, both types of claims are considered and treated commonly in our discussion and conclusion herein.

5. The Griggs' assert that their "conduct, together with the listing of their administrative expenses in the debtor's schedules, and their communications with the debtor regarding their understanding with respect to the payment of their claim, constitute a valid and amendable informal proof of claim." (Mem.Supp.Req. for Payment of Admin.Exp., at 3–4).

"actually filed" claims and those "deemed filed," and that those "deemed filed" should be allowed for the sake of paperwork reduction and efficiency. In reaction to this and other similar holdings, Congress amended the Rule to clarify that only claims *actually* filed in the superseded case may be treated as filed in the converted case.

Even after having made that clarification, however, the difficulties routinely encountered by trustees in converted Chapter 7 cases have not gone unnoticed by Congress. The 1987 Advisory Committee Notes concerning Rule 1019 state:

> When Chapter 11 cases are converted to chapter 7 cases, difficulties in obtaining and verifying the debtors records are common. It is unfair to the chapter 7 trustee and creditors that they be bound by schedules which may not be subject to verification.

Collier further explains:

> The amended rule recognizes that it was too burdensome on trustees in superseding chapter 7 cases to determine from usually sloppy and incomplete records what claims should be allowed because of a presumed but not actual filing.... Since creditors will be given timely notice of the conversion, they will have an adequate opportunity to file proofs of claims.

7 *Collier On Bankruptcy,* ¶ 1019.07 (15th ed. 1993).

■ Here, the Griggs did not file proofs of claim for their superpriority and administrative advances made during the Chapter 11 case, nor did they file any proof of claim before the bar date set in the Chapter 7 case. This default renders the Griggs' claims as late, under violation of Rule 1019(3). In *In re Hof Brau, Inc.,* 73 B.R. 72, 74 (Bankr. D.R.I.1987) this Court, recognizing the amended language of Rule 1019(3), rejected *In re Crouthamel,* 786 F.2d 141, as precedent for future cases, but allowed the creditor's claim there, since the case was filed prior to the rule change. We also held that the listing of a creditor in a Debtor's Chapter 11 schedules constitutes a valid claim only while the case remains in Chapter 11. Upon conversion, Chapter 11 creditors who did not file proofs of claim in the superseded Eleven

must do so prior to the Chapter 7 bar date, to be considered timely.

Similar reasoning was given in *In re Transouth Truck Equipment, Inc.,* 87 B.R. 937 (Bankr.E.D.Tenn.1988). In that case the court disallowed the claim because of the state's failure to file a Chapter 11 administrative expense claim prior to the bar date following conversion. A preconversion "request for payment" under § 503(a) of the Bankruptcy Code was held to be insufficient.

Based on the Bankruptcy Code and Rules, and our reading of the foregoing authorities, we conclude that, upon conversion, the Griggs were required to file proofs of claim, and that an informal written request for payment is insufficient in the Chapter 7 case.

*Issue 2    The effect of a tardily filed Chapter 7 proof of claim on the priority status of administrative expense claims under § 507?*

■ This issue deals with whether a tardily filed claim in the superseding Chapter 7 case requires disallowance, *period,* or whether the late filing impacts only on the priority of distribution?

In *In re Corporacion de Servicios Medico–Hospitalarios de Fajardo, Inc.,* 149 B.R. 746 (Bankr.D.P.R.1993), this Court, sitting by designation, held that "to interpret Rule 3002(c) as setting an absolute deadline for the filing of claims in a Chapter 7 case in order for them to qualify otherwise as allowable, would render Code § 726(a)(2)(C) meaningless." *Id.* at 749. "Instead, we hold that Rule 3002(c) simply determines whether a claim is to be classified as *timely* or *tardily* filed, for priority of distribution." *Id.* at 750. A similar conclusion was recently reached by the Second Circuit Court of Appeals in *United States v. Vecchio (In re Vecchio),* 20 F.3d 555 (2d Cir.1994). We still agree with this reasoning, and hold that the Griggs' administrative and superpriority claims should not be disallowed for being untimely filed.

■ 11 U.S.C. § 726(a) governs the distribution of property of the estate. Section 726(a)(1) classifies administrative claims under § 507 as first priority claims. No distinction is made as to timely or tardily filed § 507 claims. However, § 726(a)(2) specifi-

cally breaks out and differentiates between allowed unsecured claims which are: (1) filed on time; (2) filed out of time and *without* notice of the bankruptcy; and (3) filed late, but *with* notice. Therefore, the question here becomes, what effect does the late filing of the Griggs' Chapter 7 proofs of claim have on their priority status? Several courts have considered this problem, most recently *In re Vecchio*, 20 F.3d 555. In that case, the Circuit Court reversed the bankruptcy and district courts, both of which had subordinated, a late filed priority claim, to the third level, and held that "§ 726(a)(1) grants priority claims first-tier distribution regardless of when they were filed." *Id.* at 558.

■ A lengthy discussion of the legislative history surrounding the enactment of § 726 followed, and apparently satisfied the Appellate Court that "the scheme set forth in § 726(a) imposes no threshold requirement of timely filing for a claim to be 'allowed', and thus eligible for payment." The Court cited with approval the Sixth Circuit decisions in *United States v. Cardinal Mine Supply, Inc.*, 916 F.2d 1087 (6th Cir.1990), and *Internal Revenue Service v. Century Boat Co. (In re Century Boat Co.)*, 986 F.2d 154 (6th Cir. 1993), which held that priority claims retain their priority status, whether timely filed or not. Upon review of these cases, we agree that where proper notice is not given, a late filed claim retains its priority status. However, where, as in this instance, due and proper notice of conversion and the deadline for filing proofs of claims was given, we are not persuaded, as was the court in *In re Vecchio*,[6] that such claims are entitled to priority treatment under § 726(a), regardless of their late filing.

Upon consideration of the facts and travel of this case vis-a-vis the statute in question, we believe that the failure of the statute to differentiate between timely and tardily filed administrative claims in converted cases was purely the result of congressional/legislative oversight. In the normal course, if the case remained in Chapter 11, the Griggs would not be required to file a claim in order to protect their status as priority claimants. In addition, if the case was originally commenced under Chapter 7, there would be no requirement that the Griggs file a claim for administrative expenses incurred in Chapter 7; they would only have to file a request for payment of an administrative expense which, under § 726(a) would receive first priority treatment. The *only* instance where claimants are required to file proofs of claim to protect their priority status is where, as here, the case converts from some other chapter to Chapter 7.

Thus, we are not satisfied that in enacting § 726(a), the drafters considered that some administrative claims require the filing of a proof of claim (while most do not), and that, therefore, they consciously intended to include tardily filed priority claims, *where the creditor has notice*, within the first priority distribution class under § 726(a).

Although the Court in *In re Vecchio*, stated "our straightforward reading of § 726(a) results in no penalty for priority creditors who, with notice of the bankruptcy, fail to file their claims within prescribed deadlines." *Id.* at 560. It also acknowledged that "bankruptcy courts have authority to subordinate a late filed priority claim under principles of equitable subordination."

■ We also recognize that the Court has discretion to subordinate claims pursuant to § 510(c), but disagree with *In re Vecchio* to the extent it holds that the late filing of a priority claim *with* notice of the bankruptcy should not automatically result in a one-tier subordination, in the same manner that allowed unsecured claims are treated under § 726(a)(2) and (3).[7]

Based upon the foregoing discussion, we rule that the Griggs' late filed superpriority and administrative claims are allowed in the

---

**6.** *In re Vecchio* states that "[a]lthough the Sixth Circuit has subsequently read *Cardinal Mine* as a case dealing only with priority creditors who lacked notice, *see IRS v. Century Boat Co. (In re Century Boat Co.)*, 986 F.2d 154, 158 (6th Cir. 1993), the force of its interpretation of § 726(a) applies to priority creditors with notice as well."

**7.** We believe this conditional language refers to administrative claims filed on time, and therefore does not prohibit the subordination of late filed priority claims, where notice of the bar date was properly given.

Chapter 7 case, but subordinated from their first priority position under § 726(a)(1), to second priority claims pursuant to § 726(a)(2), to share on a par with allowed unsecured claims.[8]

*Issue 3   Whether the Griggs' correspondence with the Debtor and the Trustee qualifies as an informal proof of claim.*

 Although the resolution of issues 1 and 2 is dispositive of this controversy, one remaining argument deserves attention. The Griggs assert that through correspondence with the Debtor and the Trustee, and because the Debtor listed their claims in its Chapter 7 schedules, together with copies of receipts for the advances, that such information, cumulatively, constitutes an informal proof of claim, which could be and which was amended (retroactively) by their subsequent filing of formal proofs of claim.

Based upon the operative and controlling law, we cannot agree. "In order for a document to constitute an informal proof of claim it must be in writing and filed with the bankruptcy court. Furthermore, it must set forth the nature and amount of the claim and the intent on the part of the claimant to hold the debtor liable." *In re Float, Inc.*, 163 B.R. 18, 20 (Bankr.N.D.N.Y.1993) (citing *In re W.T. Grant Co.*, 53 B.R. 417 (Bankr. S.D.N.Y.1985)). The Griggs rely on three documents. However, neither the letter to the Debtor dated April 8, 1992, nor the August 26, 1992, letter to the Trustee were filed with the Court, and therefore neither satisfies the elements needed to constitute an informal proof of claim. Since the schedules were filed by the Debtor and not the Griggs, these may not be construed as statements demonstrating an intention to hold the debtor liable, and on that ground may not qualify as an informal proof of claim, either. Accordingly, we conclude that none of the documents relied upon by the Griggs meet the requirements for an informal proof of claim as described in *In re Float, Inc.*

8. While this opinion was in final draft form, we received notice of Judge Hillman's decision in *In re Brennan*, 167 B.R. 316 (Bankr.D.Mass.1993), previously unpublished, which is practically a mirror image of several of the issues we discuss herein. We adopt the reasoning and the holding in *Brennan* as it applies here, except that we have subordinated the late filed claim by only one tier, whereas Judge Hillman opted to lower the claim by two tiers.

*CONCLUSION*

In accordance with the foregoing discussion and upon consideration of the referenced authorities, it is ORDERED that the Griggs' February 18 and March 5, 1993, proofs of claim are ALLOWED in the amounts requested, but are subordinated one tier, to the same class as general unsecured creditors, pursuant to 11 U.S.C. § 726(a)(2).

Enter Judgment consistent with this opinion.